Martin H. Sullivan et al. v. John Lear—Syllabus.

MARTIN H. SULLIVAN ET AL., AS EXECUTORS, APPELLANTS, vs. JOHN LEAR, APPELLEE.

1. When an article has no market value its value may be shown by proof of facts affecting the question, and naturally calculated to aid the jury in reaching a correct conclusion. The price at which a similar thing may have sold in the same locality, and the opinion of persons properly informed as to the value of things of the same kind, may be proven.

2. A franchise or bare right to do a thing is of no value when considered exclusively of its utility. Its value is dependent upon the practical use to which it can be put, or the profit which, by proper management, can be made out of it.

3. When a franchise is of such a character as to render both an expenditure of money and the application of business judgment and skill in its management necessary to make it useful and profitable, its value must be determined by a consideration of it in connection with such possibilities.

4. When the opinion of a witness as to the value of a franchise granted by a city to build and operate a wharf is based upon his own experience in the construction and successful operation of a wharf under a similar franchise, such opinion is not made inadmissible as evidence by the fact that such witness cannot state what is the value of the former franchise in itself and without reference to the improvement of which it is capable.

5. An opinion of the value of such a franchise, which is based upon the assumption of the profit which could be derived from the operation of a wharf to be constructed under it, is not made inadmissible as evidence by the fact that such witness cannot state the value of it when considered without reference to the ability of the person owning it to build a wharf and make business for it.

6. Where a city has granted a franchise to a person at a certain price, and the grant is assignable by such person, the consideration charged by the city for the franchise is not conclusive upon the question of its value in an action between the original grantee and his vendee growing out of a subsequent sale of such franchise.

7. Where a deed of conveyance or assignment acknowledges the receipt of a valuable consideration without specifying what it is, parol testimony is admissible to prove the character of the consideration.

8. Where a deed conveys or assigns property "for value received," such recital is not inconsistent with, nor does it exclude, parol proof that the consideration for which the deed was made was executory in its character.

9. The acknowledgment in a deed assigning a franchise to build and operate a wharf was for "value received" of the vendee, and there was no evidence as to what the consideration was, except the testimony of one witness to the effect that when the deed was delivered by the vendor to the vendee the latter said, "all right, I will give you the loading of one-third of all my ships as long as my firm lasts." The vendor was a stevedore, and the vendee a consignee of vessels: *Held*, That the jury were justified in regarding the promise as the consideration for the deed, and not as a mere gratuitous delaration.

Appeal from the Circuit Court for Escambia county.

The declaration of the plaintiff, Lear, contains two counts.

The first count alleges that appellants' testator, D. F. Sullivan, purchased in his lifetime from Lear a certain franchise and wharf privileges, owned by the latter, and in consideration therefor agreed and promised to give Lear, who, at the time of the sale, and at the commencement of the suit, was a stevedore, the loading of one-third of all vessels consigned to him, Sullivan; but that neither the said Sullivan, nor the defendants, who are the executor and executrix of his last will and testament, have complied with said agreement, nor have they paid for the franchise and privileges, but refuse to do so.

The second count sets up the purchase of the franchise and wharf privileges, and describes them as being on the extension of Adams street, in the city of Pensacola, and as having been granted to Lear by the City of Pensacola, and alleges that they were reasonably worth $5,000, and have not been paid for.

Damages are laid in each count at five thousand dollars.

The defendants put in two pleas. The first plea is to the whole declaration, and alleges that the plaintiff, at the time of the transfer and conveyance to Sullivan of the franchise and privileges mentioned, received from Sullivan the entire consideration therefor. The second plea is confined to the first count, and states that Sullivan did not, as alleged, promise to give to the plaintiff the loading of one-third of the vessels consigned to him.

There was a trial by jury, resulting in a verdict for two thousand dollars, in favor of the plaintiff. The defendants having moved for a new trial on the grounds, 1st, that the verdict was contrary to the charge of the court, and 2d, contrary to the evidence, and the motion having been over-ruled, and judgment entered on the verdict, they appealed.

Upon the trial the plaintiff introduced as a witness one W. L. Wittich, who testified that he was a timber merchant, doing business at Pensacola, and the owner of a wharf; that he considered the wharf privilege or charter granted to the plaintiff by the City of Pensacola to be worth $5,000, and as valuable as the one that witness himself had obtained from the city, and that he estimated his own as worth from $2,500 to $40,000. Upon cross-examination he testified that his own wharf charter or privilege was obtained from the city for the consideration of his paying $10 rent annually; that he fixed the value of his wharf charter at $25,000, and plaintiff's like charter at $5,000 at least, because he, witness, had, by an expenditure of eight or ten thousand dollars, made a wharf property which would pay an interest on $30,000, but he could not state what was the value of plaintiff's wharf privilege in itself, and without reference to the improvements of which it was capable.

Wittich Menefee, another witness, testified that he was a timber merchant in Pensacola, and that he considered the wharf charter or privilege granted by the city to the plaintiff as worth $5,000; that he fixed this value upon it because a person who controlled ballast, by building a wharf under it, could derive a profit which would make the charter or privilege worth $5,000. Upon the cross-examination he said that he could not state " the value of such privilege in itself without reference to the ability of the persons owning it to build a wharf and controlling ballast to make business for it;" that there were several such persons, shipping merchants, about one dozen, he thought in Pensacola.

Defendants' counsel moved to strike out so much of W. L. Wittich's testimony as stated that he considered the wharf charter or privilege granted to the plaintiff by the city as worth $5,000, because, or upon the ground, that the witness " had based his said valuation on the profit of his own wharf built under witness' own privilege, and made profitable by the facilities which he possessed, and because the value of such charter or privilege was fixed by the rental at which it was procured from the city."

Defendants' counsel made a similar objection and motion to the testimony of the witness, Menefee, upon the ground that such witness based his valuation of the charter or wharf privilege of the plaintiff upon a value to be bestowed upon it by the capital and business of the party who might own it, and not upon its value as a mere charter or privilege to build a wharf.

Callaghan, a witness for the plaintiff, testified that he knew the place where the plaintiff had obtained a charter or privilege from the city of Pensacola to build a wharf; that he could not state the value of that charter or privilege, but that he had obtained a like charter or privilege to

build a wharf at the foot of a street east of the street to which plaintiff's charter applied; that he had sold it for $1,000, but got really $800, with the reservation of the privilege of the right over the wharf. Upon cross-examination he stated that he had obtained his charter from the city of Pensacola for an annual rent of $10. Defendants' counsel objected to and moved to strike out so much of testimony of the witness as stated the price at which he had sold his wharf charter or privilege, because it was not admissible testimony of the value of the charter or privilege granted by the city to the plaintiff.

The Circuit Judge denied the above motions to strike out testimony and counsel for defendants excepted to his rulings.

An ordinance of the city of Pensacola, passed January 18, 1882, and approved the next day, authorized Lear, his associates, heirs and assigns to establish and erect a wharf extending into the bay from the termination of Adams street into the channel of the bay. The wharf was to be " commenced" within six months from the passage of the ordinance, and to be of a width not less than twenty feet, nor greater than the width of Adams street, and exclusive wharf privileges on said wharf are given by it to Lear, his associates, heirs and assigns, except that property holders on either side shall not be excluded from said wharf. It also gives Lear, his associates and assigns, full power to demand and receive wharfage from all vessels, barques, flats, lightersand steamboats loading or unloading at or attached to said wharf, and for all goods deposited on or taken from or over said wharf; no drays, carts, vehicles or pleasure carriages transporting goods or merchandise on or from the wharf are, however, to be charged wharfage on such wharf. Lear, his associates, heirs and assigns are, in consideration of the erection of said wharf to have exclusively the privil-

eges set forth in the ordinance, he or they paying to the city the yearly sum of ten dollars. At the expiration of twenty-five years, the city is to have the privilege of purchasing said wharf at such valuation as may be determined upon by three arbitrators, one to be appointed by the city, one by Lear, his associates, heirs or assigns, and the third to be chosen by the two arbitrators thus appointed.

The deed executed by Lear to D. F. Sullivan bears date January 19, 1882, and " for value received of D. F. Sullivan," conveys and assigns to the latter, his heirs and assigns, all the right, title and authority granted by said city through or by said ordinance to establish and erect a wharf at the termination of said street, as well as all the other rights, privileges and franchises connected therewith vested and conferred by such ordinance.

The plaintiff had at the outset of the trial testified that he was a stevedore engaged in loading ships in the port of Pensacola, and that there were consigned to D. F. Sullivan, from 1882 to 1884, annually from 80 to 100 vessels, and that the profit to the stevedores of loading them depended upon their size, but that the lowest rate of net profits for unloading them would be about $200 to the vessel.

Morton Hart had testified, on the plaintiff's behalf, that in 1882 he went down to the wharf with John Lear to see D. F. Sullivan, and that they there met Sullivan standing on a pile of lumber, and that Lear said to Sullivan : " Here is the deed to that wharf," and gave it to Sullivan. " He referred to the wharf at the foot of Adams street, for we had just been talking about his selling that wharf to Mr. Sullivan, and that Sullivan said ' All right, I will give you the loading of one-third of all my ships as long as my firm lasts.' " Upon cross-examination he said " that he did not see or know the contents of the paper Lear had in his hand ; could not say whether it was the deed made by

Lear to Sullivan for the property or franchise he had from the city government granting the wharf privilege, but Lear said it was a deed to the wharf. That he had shortly before that got a charter from the city of Pensacola to build a wharf at the foot of Adams street. That he was not present when the deed from Lear to Sullivan was made."

The above is all the testimony in the case.

The errors assigned by appellant in this court are as to the action of the Circuit Judge in overruling the motions to exclude testimony of Wittich, Menefee and Callaghan, and the denial of the motion for a new trial.

The motion for a new trial was on the ground that the verdict was contrary to the charge of the judge and to the evidence.

*R. L. Campbell* for Defendants.

Errors assigned: 1. Overruling the defendants' motion to exclude from the jury so much of Wittich's testimony as related to the value of plaintiff's wharf franchise or privilege based upon the improvements made by the witness under his own franchise.

2. Overruling the defendants' motion to exclude the testimony of Menefee, so far as he based his estimate of the value of the plaintiff's franchise upon the value of improvements made under such a franchise by a person controlling ballast.

3. Overruling the defendants' motion to exclude from the jury so much of Callaghan's testimony as related to the sale of his own franchise or wharf privileges.

4. Overruling defendants' motion for a new trial.

I. and II. These errors will be considered together.

The cardinal principle of the law of damages is compensation.

Recovery must be commensurate with the loss of the plaintiff, and not with the possible profit which the appellants' testator might have reaped as a proximate or remote consequence of his bargain. Sedg. on Damages, 26 ; 1 Southerland on Damages, 17, 127-8.

The limit of the appellee's right of recovery was the value of the franchise as he held it, for that was the extent of his loss at parting with it, 2 Southerland on Dam., 204 ; and of that value both Wittich and Menefee declare their ignorance.

In the ruling of the Circuit Court the principle of compensation was discarded, and for it was substituted the potential value which might arise from combining with the franchise a large capital and a specific business in the hands of an assignee commanding both such business and capital.

That ruling was made, too, in the absence of any proof whatever that there had been any such union of capital or business with the franchise in the hands of Sullivan, and hence the jury had before it testimony not of the value of the franchise as held by Lear or by Sullivan, but of a possible value which might have been bestowed upon it under certain conditions.

III. The testimony of Callaghan, so far as it related to the sale of his own wharf franchise, should have been excluded from the jury.

The fortuitous sale of his charter, at a price greatly over its cost, was no test of the value of the plaintiff's franchise.

This witness, like Wittich and Menefee, could not state the value of the plaintiff's franchise.

He, however, states, as Wittich had previously done in

reference to his own, that his franchise was for the consideration of an annual rent to the City of Pensacola of ten dollars, and the plaintiff's charter shows that his privilege was granted upon a like rent.

Here, then, was a valuation fixed by the official body that granted these franchises.

The legal presumption is that such body acted rightly, and exercised a sound judgment in the interest of the public in fixing such valuation.

Having full proof of a valuation fixed by public authority upon such franchises, the Court should have adopted it, and ruled out the proof of the fortunate bargain made by the witness.

IV. The court should have set aside the verdict and granted a new trial.

The deed from plaintiff to Sullivan acknowledges that value had been received by the former.

The court charged the jury that such acknowledgment was conclusive, unless disproved by satisfactory testimony.

There was no such proof submitted to the jury by the appellee.

Hart's testimony, which was relied upon as having that effect, evidences no such contradiction of the recital of the deed.

He does not profess to state what was the consideration plaintiff was to receive for the transfer of his franchise.

He merely testifies that he heard Sullivan say to plaintiff, " I will give you the loading of one-third of my ships while my firm lasts."

Whether such declaration was gratuitous on the part of Sullivan, or the consideration for the franchise, the witness does not say, nor does he even testify to any acceptance of Sullivan's declaration by plaintiff.

Again, according to Hart's testimony, the deed was ex-

ecuted before Sullivan's declaration was made, and hence the declaration cannot be deemed to express the consideration upon which the deed was founded, without some proof touching the transaction antecedent to the meeting of Sullivan, Hart and plaintiff.

The charge required the jury to accept the recital of the deed as establishing payment, and it imposed upon the plaintiff the onus of negativing that payment.

Until so negatived the recital was conclusive.

The fact being established by the deed that value had been received by plaintiff, in the absence of proof as to the actual consideration, it must be presumed that it was one of such a character as could have been received at the time of executing the deed; for a fact being established no *presumption* inconsistent with it is allowable.

Hart's testimony can be accepted as nothing but proof of a gratuitous declaration of Sullivan unless we *presume* that it declared the consideration for the transfer of the franchise; but as the receipt of that consideration at the date of the deed was impossible, it must be discarded as a *presumption* inconsistent with the recital; otherwise a presumption would be substituted for the fact plaintiff was required by the issue to prove—that the consideration was not received.

" A presumption of fact is a logical argument from a fact to a fact, or an argument which infers a fact otherwise doubtful from a fact which is proved." 2 Whart. Ev., sec. 1225.

Value received by plaintiff is a fact established by the deed; and upon that fact may logically be based the presumption that the nature of the consideration was such as made it capable of being received at the date of the deed.

It follows, therefore, that as the loading of ships during

the existence of a firm could not be completed at the date of the deed, such could not have been the consideration.

The argument for appellee is that the loading of ships was the consideration, and as such loading could not have been completed at the execution of the deed, therefore the consideration could not have been received as acknowledged. Here we have a presumption based on a presumption, and neither resting upon an established fact. That the loading of the ships was the consideration was a fact to be proved, and, being proved, there would have been " a logical argument from a fact to a fact," that the acknowledgment of value received had no foundation in fact ; but there being no proof as to what was the actual consideration, there is nothing upon which to rest the presumption that value was not received by appellee at the date of the deed.

This is not a case involving a mere conflict of testimony, as Mayo vs. Hynote, 16 Fla., 673, and Wharton vs. Hammond, 20 Fla., 673, nor one where the only question is as to the preponderance of evidence, as in Huling vs. Florida Savings Bank, 19 Fla., 695, but one in which on the precise issue of value received by the plaintiff *vel non* there is clear and pointed affirmative testimony standing ur ¬tradicted and unexplained.

*W. A. Blount* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court :

·Where an article in question has a' market value, such value is usually taken as the actual value of such article. The proof of value is generally by the judgment or opinion of witnesses. Sutherland on Damages, vol. 2, p. 375. If the article has no market value its value may be shown by proof of such elements or facts affecting the question as

may exist. Recourse may be had to the items of cost and its utility and use. The opinions of witnesses properly informed on the subject may be given in respect to its value. Ib. 378. Lafayette B. and M. R. R. Co. vs. Winslow, 66 Ill., 219 ; Wemple, *et al.*, vs. Stewart, *et al.*, 22 Barbour, 154 ; Kirschman vs. Lediard & Ree, 61 Barbour, 573. A franchise can not be said to have a market value, and when its value is necessary to be proven a resort must be had to the nearest relative facts and circumstances from which such value may be fairly inferred.

The franchise or bare right to do a thing considered with reference to itself alone is of no value. It is only when it is considered relatively and in connection with its *use* that it can be said to be valuable. The wharf without the right to use it would be of no appreciable value. It is the combination of the two—the wharf and the franchise—that mutually impart to each other, when combined, an estimable value.

It is clear that Wittich's opinion of the value of the franchise sold by the plaintiff to Sullivan is based in some degree upon the success of his own wharf business. He has so managed this business as to derive a revenue from it equal to the amount which $30,000, put at interest at the ordinary rate, would produce, and because he has done so he thinks that the franchise sold by plaintiff to be worth $5,000. The value of anything is to be guaged with reference to the practical uses to which it can be put, or the profit which by proper management can be made out of it. That the witness could not state what was the value of the charter in itself and without reference to the improvements of which it was capable does not affect the admissibility of his testimony, because no franchise is of any value when considered without reference to its utility, and where it is of such a character as to render both an expenditure of money

and the application of business judgment and skill in its mangement necessary to make it useful and profitable, its value must be determined by a consideration of it in connection with such possibilities. As a purchaser, we must regard Sullivan as a person who would have the means of making the franchise useful, or as desiring to hold it with the expectation of selling to some one who did have such means or to one who had similar expectations, or we must consider him as one whose interest it was (either to avoid competition or for other purpose) to hold the franchise un-improved ; and in either event the same principles obtain in fixing the value. Whatever effect the poverty or other disabling circumstance of an owner of a franchise or other property may have upon him in fixing the price at which he may have sold, it has no effect upon the principles by which the value of anything sold, without fixing the price, is to be ascertained. Its value, whatever it may be, is to be ascertained in the same manner and upon the same principles, whatever may be the condition, circumstances or purposes of the buyer. Wittich's testimony shows him to be a person having such acquaintance with the character of the property in question as to entitle him to give an opinion. It was proper for the defendant to develop on cross-examination the foundation of the opinion, but we see nothing in the development so made which calls for the exclusion of his testimony.

The testimony of Menefee was likewise admissible. His opinion is based upon the utility of the franchise and his business is such as to make his opinion competent testimony.

Callaghan's testimony was admissible. The price for which one thing actually sells is certainly some evidence of the value of another thing of the same kind. It is a practical test of what persons dealing estimate things

of the kind as worth, and when a thing has no market value we think it may be proved upon very much the same principle that the price for which an article, having a market value, has been previously sold, may be proved. 2 Sutherland, 375, 376, 378. It is a fact bearing upon the question, and like the price for which the city granted the franchise, is a legitimate aid to the jury in arriving at a correct estimate of the thing's value. Neither sale is conclusive upon the jury, who are to form their opinion from all the testimony affecting the question of value; yet we may say that it seems not at all unreasonable that a city government desiring the improvement of its wharves and the consequent development of the public interest would naturally exact but a nominal consideration from persons proposing such improvement, whereas the grantee of such privilege would in selling expect full compensation for it as the basis of a profitable business.

In a case where the subject matter of the sale has no market value, the question of value is peculiarly one for a jury, and whatever fact seems naturally calculated to aid them in reaching a correct conclusion should be submitted for their consideration.

The Circuit Judge charged the jury in effect that if they were satisfied from the evidence that Sullivan received from the plaintiff a transfer of the charter for or in consideration that the former should give to the latter the loading of one-third of the vessels to be consigned to him, Sullivan, then they must find for the plaintiff and assess his damages at such a sum as the evidence may show would have been the profit, if any, which would have accrued to the plaintiff by the loading of the vessels consigned to Sullivan in his life time. That if they were not satisfied that such a consideration for the transfer was agreed upon, but were satisfied from the evidence that Sullivan purchased from the plain-

tiff the charter and never paid for the same, they should find for the plaintiff and assess his damages at the price, if any, proved by the testimony to have been agreed upon as to be paid for the same, or if there was no price agreed upon they should assess the damages at whatever sum the testimony shows to have been its value at the time of sale.

The judge also charged that where a party conveys property to another, and in the deed of conveyance acknowledges that he makes the conveyance for value received, such acknowledgment is evidence that he has received the value of said property and must be taken as conclusive that he did receive such value, unless it is proved that such value was not actually received ; and, therefore, if, in the case at bar, the jury was satisfied from the evidence that the plaintiff executed a deed of conveyance of the wharf charter, and acknowledged in such deed that he had received the value of such charter, and were further satisfied that there was no evidence to prove, notwithstanding such acknowledgment in the deed, that such value was not received, they must find for the defendant.

There was no exception to the judge's charge. Hart's testimony sustains the inference of the jury that the consideration was at least not an executed consideration. Sullivan's promise, made under the circumstances related, is inconsistent with the theory that there was nothing more to be done by him in connection with the transaction represented by the deed, or the idea that the deed acknowledges solely an executed consideration. Where a deed acknowledges the receipt of a consideration without specifying what it is, parol evidence is, we think, admissible to prove its character, upon the principle that the deed is incomplete or does not show the entire transaction. Greenleaf's Ev., sec. 284 a. Evidence may be given of a consideration not mentioned in a deed, even where one is

mentioned, if the former be not inconsistent with the latter. Ibid, sec. 285. The only consideration of which we have any testimony of the character of, is the promise of Sullivan. It was made when the deed was delivered, the time when considerations, whether executed or executory, are delivered, and there is nothing in the deed from Lear to Sullivan inconsistent with the proof of such consideration. Such a promise, made under such circumstances, is to be taken as a consideration for the deed rather than as a gratuitous declaration. No prudent business man would have made it as a mere gratuity under the circumstances, particularly in view of its value, if performed. The evidence sustains the verdict and the motion for a new trial was properly overruled.

The judgment is affirmed.