518        SUPREME COURT OF IOWA,

Beard & Sons v. The Ill. Cent. Ry. Co.

BEARD & SONS V. THE ILLINOIS CENTRAL RAILWAY
COMPANY.

1. **Carriers :** DUTY TO CARE FOR GOODS CARRIED. A carrier must use due diligence to protect goods which he receives for carriage from every source of injury which he may avert, and which, in the exercise of care and ordinary intelligence, may be known or anticipated ; and he must have regard to the character of the goods he transports. And so, where defendant in summer time shipped butter in refrigerator cars from northern Iowa to New Orleans, and it was carried in such cars to St. Louis, and was there delivered to an intermediate carrier, who placed it in ordinary cars and transported it a short distance, and then turned the cars over to defendant, and the defendant transported it in the same cars, with no protection against the heat of the season, to New Orleans, and it was damaged by the heat, *held*—

    (1) That it was defendant's duty to transport the butter in such cars as would have protected it from injury by heat.

    (2) That, having accepted the butter for transportation, it could not avoid liability on the ground that it did not have the necessary cars to transport it with safety.

    (3) That it could not be excused on the ground that the cars in which it received the butter were sealed.

    (4) That a custom to haul the cars received from the intermediate carrier, without change of cargo, was no defense.

    (5) That it was no defense that the rate of charges, as shown by the way-bill, was for common cars only. (See opinion for citations in support of the foregoing points.)

2. ———— : ———— : EVIDENCE. In such case, evidence tending to show that a custom prevailed among carriers by railroad to put butter into cold storage when refrigerator cars were not ready to receive it, was properly admitted to sustain the general allegation of negligence on defendant's part in not taking proper precautions to preserve the butter.

3. ———— : ———— : PRESUMPTION AS TO CONDITION OF GOODS. In such case the court properly instructed the jury that they might infer that the butter was in good condition when received by defendant, from the fact that it was shipped in good order, in a refrigerator car, for St. Louis. (See opinion for citations.)

4. **Instructions :** TAKING ISSUE FROM JURY. It is proper for the court to take from the jury an issue raised by a defense which there is no evidence to support.

*Appeal from Cedar Rapids Superior Court.*—Hon. John T. Stoneman, Judge.

Filed, February 10, 1890.

Action to recover ·damages for injury sustained by plaintiffs from the negligence of defendant in transporting a carload of butter, which it had received from an intermediate carrier, whereby the butter was greatly injured. There was a verdict and judgment for plaintiff. Defendant appeals.

*Mills & Keeler* and *W. J. Knight*, for appellant.

*Rickel & Crocker*, for appellees.

Beck, J.—I.   The plaintiff delivered to the Burlington, Cedar Rapids and Northern Railway Company, at

1. Carriers: duty to care for goods carried.

West Union, in two consignments, a large quantity of butter for transportation to New Orleans. The facts as to both separate consignments are identical. In the further statement of facts they will be referred to as but one transaction. The butter was put in refrigerator cars by the company first receiving it and was transported therein over connecting roads to St. Louis, where it was transferred by drays across the river, and delivered to the St. Louis, Alton and Terre Haute Railway Company, known as the "Cairo Short Line," and put in a common box car, and a lined fruit car, each of which was sealed, as is usually done, and sent on the same day to Duquoin, Illinois, and delivered to defendant, which transported it to New Orleans, in the same cars. The butter was not examined by defendant, and no attempt was made to ascertain its condition, on the probability that it could or would not be transported in the cars, without injury, to New Orleans. The Cairo Short Line Company billed the butter to New Orleans at a rate of freight charges for common cars. It appears that the consignment took the usual course of transaction between defendant and

the Cairo Short Line, at Duquoin.   It is not shown that plaintiff, or the initial or connecting carrier, made any demand of defendant or the Cairo Short Line Company for a refrigerator car, or for the protection of the butter from the effects of heat by the use of ice in the common car in which it was transported, and it is not shown that plaintiff, or the initial carrier, or the connecting companies to St. Louis, had any notice or information in any way, directly or indirectly, of the shipment of the butter without protection from the effects of the heat, nor did they have any notice or information of the practice and course of business adopted by defendant and the Cairo Short Line at Duquoin.   We are required to determine whether, under the law upon these facts, the defendant is liable.   The discussion of this question will dispose of certain objections made by the counsel of defendant to the rulings of the court below upon instructions and admissions of evidence.

II.   We will proceed to inquire as to the duty of defendant upon receiving the butter in a car from the Cairo. Short Line for transportation to New Orleans, without directions or instructions as to the character of the car in which it should be carried. A carrier's duty is not limited to the transportation of goods delivered for carriage. . He must exercise such diligence as is required by law to protect the goods from destruction and injury resulting from conditions which, in the exercise of due care, may be averted or counteracted.   He must guard the goods from destruction or injury by the elements; from the effects of delays ; indeed, from every source of injury which he may avert, and which, in the exercise of care and ordinary intelligence, may be known or anticipated. Unknown causes, or those which are inherent in the nature of the goods, and cannot be, in the exercise of diligence, averted, will not render the carrier liable. The nature of the goods must be considered in determining the carrier's duty. Some metals may be transported in open cars.   Many articles of commerce, when transported, must be protected from rain, sunshine and heat,

and must have cars fitted for their safe transportation. Live animals must have food and water, when the distance of transportation demands it. Fruit, and some other perishable articles, must be carried with expedition and protection from frost. So the carrier must attend to the character of the goods he transports. He is informed thereof by inspection of the freight-bills, or by other papers accompanying the shipment.

In the case before us the marks on the packages and the way-bill disclosed that the subject of shipment was butter. The employes of defendant were endowed with intelligence which taught them that the season was summer, when warm weather prevailed; that butter, in common cars, would be greatly injured by the ordinary heat of the climate; and that the butter, as it approached its destination, would be subject, by reason of the change of latitude, to greatly increased heat from the weather. All these things are familiarly known to all men. Surely, the law will presume that defendant's employes had full knowledge thereof. The law required the defendant, having received the perishable cargo involved in this suit, to exercise the care and diligence necessary to protect it; and, if improved cars for the transportation of articles of commerce liable to injury from heat were in use, it was defendant's duty to use such cars in carrying the butter. These views are supported by the following, among other, cases: *Hewett v. Railway Co.*, 63 Iowa, 611; *Sager v. Railway Co.*, 31 Me. 228; *Hawkins v. Railway Co.*, 17 Mich. 62, 18 Mich. 427; *Railway Co. v. Pratt*, 22 Wall. 123; *Wing v. Railway Co.*, 1 Hilt. 241; *Merchants' Dispatch & Trans. Co. v. Cornforth*, 3 Colo. 280. As to the duty of defendant to use cars so constructed and used as to avoid injury from heat, see Hutch. Carr., sec. 294; *Boscowitz v. Express Co.*, 93 Ill. 525; *Steinweg v. Railway Co.*, 43 N. Y. 123.

III. But it is said: (1) That defendant did not have refrigerator cars which it could have used on the day it received the butter; (2) that the cars were sealed; (3) that it was accustomed to haul the cars received

from the Cairo Short Line without changing the cargo. We may here assume that defendant will be excused from using refrigerator cars. But it is shown that the butter could have been carried safely by the use of ice in the box cars. It was defendant's duty to use it. But, having accepted the butter for transportation, defendant cannot escape liability for not safely transporting it, on the ground that it did not have cars sufficient for that purpose. *Railway Co. v. Swift,* 12 Wall. 262; *Helliwell v. Railway Co.,* 7 Fed. Rep. 76; *Paramore v. Railway Co.,* 53 Ga. 385. The sealing of the car was not to protect it from defendant, the carrier having it under control. Surely, if it was necessary for the protection of the goods, defendant had full power to enter the car, and failure to exercise the power was negligence. *Dixon v. Railway Co.,* 74 N. C. 538. The custom of the defendant and Cairo Short Line cannot be invoked to protect one or both from negligence causing destruction to goods transported by them. "A custom to take cars without changing the goods in them, when their safety demanded it, would be a custom based upon negligence, and cannot be regarded or enforced." *Hamilton v. Railway Co.,* 36 Iowa, 31; *Allen v. Railway Co.,* 64 Iowa, 95.

IV. It is said that the rate of charges, as shown by the way-bill, was for common cars, and the defendant, therefore, undertook to furnish no other kind. If the freight charges fixed in the way-bill do not express a contract that the butter may be transported so as to destroy its value, and that the carrier is excused from the exercise of the care required of him by law, we think the freight charges in no case will limit the care to be exercised by the carrier, and restrict his liability. The defendant was not restricted, by the rate of freight charges named in the way-bill, from claiming and enforcing the payment of a just compensation for charges incurred on account of outlays made in order to safely transport the goods. *Sumner v. Railway Association,* 7 Baxt. 345. Many of the rulings of the district court upon the admission of evidence and instructions

objected to by defendant, are in accord with the views we have expressed.

V.  Evidence was admitted, against defendant's objection, tending to show that a custom prevailed among carriers by railroads to put butter into cold storage, when refrigerator cars were not ready to receive it.  This evidence was objected to, on the ground that the petition contained no allegation of negligence by reason of the failure of defendant to put the butter into cold storage.  But the petition does charge negligence on the part of defendant in not taking proper precautions to preserve the butter. The evidence tends to show what precautions ought to have been taken in this case.  Besides, the evidence serves to show that defendant's excuse for sending the butter in the common car, and for not retaining it until a refrigerator car on defendant's road came along, is not sufficient.  It is shown that such a car was run on defendant's trains on two or three days each week.

*2. ——:——: evidence.*

VI.  The superior court, in the seventh instruction given, directed the jury that they could infer that the butter was in good order when received by defendant, from the fact that it was shipped in good condition, in a refrigerator car, for St. Louis.  Of this instruction defendant complains.  It is correct. \The presumption arises that goods shipped in good order continue in that condition when in the hands of a connecting carrier. \The burden rests on such carrier to show that they were not in good condition when received by him.  Hutch. on Carr., sec. 761; *Shriver v. Railway Co.*, 24 Minn. 506; *Leo v. Railway Co.*, 30 Minn. 438; *Laughlin v. Railway Co.*, 28 Wis. 204; *Dixon v. Railway Co.*, 74 N. C. 538; *Paramore v. Railway Co.*, 53 Ga. 385.

*3. ——:——: presumption as to condition of goods.*

VII.  The defendant, in its answer, set up as a defense that plaintiffs had fully compromised this claim for loss of the butter with preceding connecting carriers, transporting the butter to defendant.  The court withdrew the issue upon this defense from the jury, on the ground

*4. INSTRUC-TIONS : taking issue from jury.*

that there was no evidence supporting the defense. Of this ruling the defendant now complains. The court, we think, ruled rightly. The evidence totally fails to show a settlement. The most that could be said is that the evidence shows propositions for settlements, and agreements to settle. But it is not shown, as is alleged in defendant's answer, that there was in fact a settlement and payment thereon, and a discharge of the claim. The action of the court in this regard is correct. The foregoing discussion disposes of all the questions requiring consideration in this opinion. The judgment, of the district court is        . AFFIRMED.