J. A. SHEA v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.[1]

October 22, 1896.

Nos. 10,100—(15).

**Carrier—Injury to Freight—Defective Car—Connecting Carrier.**

It is the duty of a railway company to provide cars reasonably fit for the conveyance of the particular class of goods it intends to carry, and it is not relieved from this duty by transporting the goods over its own line in the car of the connecting carrier in which it received them. If it uses the cars of the connecting carrier, it adopts and makes them its own for the purpose of conveying the goods.

[1] Reported in 68 N. W. 608.

Appeal by defendant from an order of the district court for Hennepin county, Belden, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $1,774.52.    Affirmed.

*Albert E. Clarke* and *W. F. Booth*, for appellant.

*Stiles & Stiles* and *Flannery & Cooke*, for respondent.

BUCK, J.    On June 23, 1894, the plaintiff contracted with the Chicago Great Western Railway Company to transport 307 boxes of lemons from Boston, Massachusetts, to plaintiff, at Minneapolis, Minnesota.    This railroad company has a line of railway from Chicago to Minneapolis, but none from Boston to Chicago.    The lemons were forwarded from Boston via the Boston & Maine Railroad in a refrigerator car to Montreal, where the lemons were by it delivered to its connecting carrier, the Chicago & Grand Trunk Railway Company, for transportation to Chicago, and by it placed in a common box car with tin roof, and in this vehicle transported to Chicago by the Grand Trunk road, where they arrived on June 29, 1894. The Great Western Railway Company refused to receive and forward the lemons, alleging as its reason the great strike existing at that time, although it had contracted to do so, and had issued its bill of lading accordingly.

Upon this refusal the car loaded with lemons was delivered to this defendant, which owns and operates a railroad from Chicago to West Liberty, Iowa, but it had no line of railroad beyond the latter place in the direction of Minneapolis, although it did there connect with the Burlington, Cedar Rapids & Northern Railway, which runs to Albert Lea, Minnesota, and there connects with the Minneapolis & St. Louis Railway, which extends to Minneapolis.

There is some controversy between the respective counsel as to who delivered the lemons to the defendant.    In the complaint it is alleged that plaintiff made this delivery.    In the answer it is alleged that "this defendant did not receive the said lemons from the plaintiff, but received them from the Chicago & Grand Trunk Railway Company, to be transported over the defendant's line in the direction of Minneapolis, subject to delay caused by labor troubles." On the trial it was stipulated that on or about June 27, 1894, the plaintiff delivered to the defendant 307 boxes of lemons, of the value of $1,842, consigned to plaintiff at Minneapolis, and that defend-

ant, as such common carrier, received the same to be by it safely carried to West Liberty, aforesaid, and there delivered to the Burlington, Cedar Rapids & Northern Railway Company, the next connecting carrier. Notwithstanding this stipulation, the defendant subsequently introduced without objection oral evidence and a written receipt showing that the car load of lemons was received by it from the Chicago & Grand Trunk Railway Company, and in counsel's brief it is alleged that when the Great Western Railway Company refused to accept and forward the car of lemons the Grand Trunk delivered it to the defendant, although it is there further alleged that plaintiff adopted the delivery as his own act.

We are of the opinion that the record quite conclusively shows that the plaintiff had nothing to do personally with the delivery of the car of lemons to the defendant, and that the transaction was one between the Grand Trunk Railway and the defendant. At no time or place did the plaintiff communicate with the defendant or the other carrier mentioned relative to the lemons after the making of the first contract, June 23, 1894, and did not know of any of the proceedings in regard to putting the lemons in an ordinary box car with tin roof, or their delivery in said car to the defendant by the Grand Trunk Railway Company at Chicago. The assumption by the defendant's counsel that the original contract, reserving the right on the part of the Chicago Great Western Company to forward the lemons by any railroad line between the point of shipment and destination, authorized that company to deliver the lemons to defendant so as to absolve it from any negligence in caring for them while in their possession, transporting them to their destination, is farfetched and unsound.

The lemons were in good order when delivered to the defendant at Chicago, June 29, 1894, and it executed a receipt to that effect. There is no evidence to the contrary, and the claim of defendant's counsel that this question of how much of the total loss was due to the damage which occurred after the fruit was taken from the refrigerator car at Montreal and before it reached Chicago should have been submitted to the jury is without merit, and not justified by the evidence, nor by the conduct of counsel at the trial.

At the commencement of the trial the defendant's counsel said: "I am inclined to think that we have got the affirmative and burden

of proof. I do not think there is any question in dispute except the conclusion of law." When the testimony was closed, the same counsel said: "If your honor please, the defendant moves the court to withdraw this case from the consideration of the jury, and to direct the jury to return a verdict for the defendant, for the reason that it does not appear from the evidence that the defendant has been guilty of any wrongful or negligent act." Further remarks of the same nature were made by the same counsel. The plaintiff's counsel also asked for the direction of a verdict in favor of plaintiff for the amount claimed in the complaint. The court granted the plaintiff's request.

It is useless to discuss this point to any great extent. Counsel should, in this case, be compelled to submit to the course which they pursued on the trial, and upon which the court below acted. The case was tried by both counsel and the court upon the theory that there was no question of fact to be submitted to the jury, and that the only question in dispute was the conclusion of law based upon admitted or undisputed facts. Such being the state of the record, both parties are concluded thereby.

When the defendant railway company received the lemons on June 29, 1894, in Chicago, it did not put the lemons into another car, but undertook to carry them in the same car in which they were to West Liberty, Iowa, where they arrived on the afternoon of June 30. The weather was extremely warm on June 30, and July 1, 2, and 3. It is admitted in defendant's answer that the lemons were loaded in a car unfit for the transportation of fruit, and that when they arrived at West Liberty they were nearly all spoiled, and of little value, on account of heat. At West Liberty the defendant had no connecting carrier to forward the lemons towards their destination except the Burlington, Cedar Rapids & Northern Railway Company, and it refused to accept and carry them forward, although the defendant, the Burlington, Cedar Rapids & Northern Railway Company, and the Minneapolis & St. Louis Railway Company had a traffic agreement by virtue of which they made and published a joint through traffic rate from Chicago to Minneapolis, and the lemons in question were to be shipped on that through rate. On July 2, 1894, the defendant's agent at West Liberty opened the car, and examined the lemons, and, finding the lemons nearly spoiled,

tried to sell them, but could get no offer in excess of $250. The defendant finally induced the Burlington, Cedar Rapids & Northern Company to transport the car to Cedar Rapids, 80 miles northwest of West Liberty, where the lemons were sold for the best price obtainable, viz. $491 net.

Thus we have for our consideration a case where a common carrier receives from a preceding connecting carrier perishable fruit in good condition, but in a car unfit for its transportation and safe-keeping, and does nevertheless transport it over its railway, and has it in its possession three or four days, in extremely hot weather, and, by reason of its not being properly cared for, it is greatly damaged. What is the liability of the carrier, even if the next succeeding carrier refuses to receive the fruit?

We should have stated that the evidence shows that if the lemons had been transported in a refrigerator car they would not have been injured by the hot weather and the delay, and that in such weather, in a close car, standing still, they would spoil very rapidly, and be nearly destroyed in 24 hours. Of the unfitness of the car and the perishable condition of the lemons the plaintiff did not have any knowledge or notice. Although the defendant could readily have communicated to the plaintiff the condition of the car and lemons, it did not do so, but permitted the latter to spoil while in its possession, and we are of the opinion that for such negligence it is liable. It was the duty of the defendant to notify the consignee of the condition of the lemons, and get instructions what to do with them, or else properly care for them. This it did not do, and therefore it became liable in damage for its negligence. It cannot shield itself from liability because the connecting carrier refused to take the lemons when tendered to it. Southard v. Minneapolis, St. P. & S. S. M. Ry. Co., 60 Minn. 382, 62 N. W. 442, 619.

The fact that it received the lemons subject to delay caused by labor troubles would not absolve it from its liability for damages on account of its negligence in carrying or properly caring for perishable property while transporting it over its lines as a common carrier. Knowing that there was a possibility or probability of a labor strike, it should have refused to accept the lemons, or, if it did, then it should have taken proper measures to secure them against spoiling by heat and unfitness of the car in which they were being trans-

ported.    Nor is its liability any the less because it received an unfit car, loaded with perishable fruit, from the preceding carrier.    The liability arises, not from the mere ownership of the car, but from its unsuitableness for the purposes for which it was being used, and the manner in which its contents were cared for by the carrier.

"In all such cases the liability of the common carrier attaches when the property passes with his assent into his possession, and is not affected by the car in which it is transported, or the manner in which the car is loaded.    The common carrier is regarded as an insurer of the property carried, and upon him the duty rests to see that the packing and conveyance are such as to secure its safety.    The consequences of his neglect in these particulars cannot be transferred to the owner of the property."    "Its obligations and liabilities    *    *    *    were not dependent upon the contract of the parties, though they might have been modified and limited by such contract. They were imposed upon it by the law from the public nature of its employment."

Hannibal Railroad v. Swift, 12 Wall. 262.

Nor can it escape liability for not safely transporting the lemons upon the ground that it did not have refrigerator cars sufficient to properly care for them at that season of the year.    It was customary and proper to ship perishable property, like lemons, over defendant's road, in refrigerator cars, in hot weather, and it knew fruit loaded in a common box car could not be iced or given any protection in such weather, and, having accepted the lemons for transportation, it was its duty to carry the same safely.    Beard v. Illinois C. R. Co., 79 Iowa, 518, 44 N. W. 800; Hannibal Railroad v. Swift, supra.    The plaintiff did not undertake the risk of the shipment in the car used, and did not waive the right to have the lemons delivered at the place of their destination.    It is the duty of a common carrier to use diligence in protecting and caring for the goods it receives, and have regard for the character of the goods it transports.

Order affirmed.