DUNLAP, Respondent, v. GREAT NORTHERN RAILWAY COMPANY, Appellant.

(148. N. W. 529.)

1.  **Carriers—Connecting Carriers—Perishable Freight—Injury—Liability of Terminal Carrier—Presumption—Burden of Proof.**

    Where freight has been placed in hands of a common carrier for transportation in good order, its then existing condition is presumed to continue to exist until the contrary is shown, and where it has been transported by successive connecting carriers, and delivered to consignee in a damaged condition, it will be presumed to have received the injury while in possession of the last carrier; and the burden is on it to show the contrary.

2.  **Same—Continuous Shipment—Connecting Carriers—Location of Injury.**

    Where apples were shipped to M., and plaintiff shipper, without delivery, directed that the shipment be continued to F., over defendant connecting carrier's line, **held,** the transportation should not be regarded as involving two separate and distinct shipments, but a continuous shipment from starting point to final destination, within the rule that where property is delivered to an initial carrier for transportation in good condition, and is delivered in bad condition by terminal carrier, the presumption is that the injury occurred on the terminal carrier's line.

3.  **Connecting Carriers—Freight Under Refrigeration—Cooling—Ventilation—Terminal Carrier's Liability.**

    Where apples were shipped in a refrigerator car over lines of connecting carriers, defendant terminal carrier was charged with knowledge that the contents of the car required cooling and ventilation, and, **held,** that, by accepting the car at junction point without opening or examining its contents, defendant assumed the risk, as against consignee, of its having been kept properly cooled and ventilated to that time, and, by undertaking to continue the carriage to destination, defendant assumed the obligation of keeping it cooled until delivery.

4.  **Carriers—Delivery—Surrender of Bill of Lading—Protection of Property Pending Delivery—Liability.**

    Though a carrier is authorized, under Civ. Code, Sec. 1557, to retain the goods until bill of lading is surrendered or indemnity furnished, it is not relieved from its duty to properly protect and care for the property in the meantime.

5.  **Same—Termination of Liability—Detention of Car—Injury to Freight—Liability as Warehouseman.**

    Where a carrier refused to deliver freighted apples to plaintiff on arrival at destination, because of plaintiff's inability to surrender bill of lading, due to its loss, and continued to

hold the perishable freight in a car, for which demurrage was charged, and during the time the apples were so held the car was not properly ventilated or iced, **held**, the carrier's liability was not changed to that of a mere warehouseman under Civ. Code, Secs. 1547 and 1377, after tender of delivery on production of bill of lading.

6. **Same—Perishable Freight—Care as Warehouseman—Ordinary Care.**

Where apples were shipped in a refrigerator car requiring icing and ventilation, failure to properly ice and ventilate the car while terminal carrier was holding the goods, because of its refusal to deliver without surrender of bill of lading which had been lost, did not constitute ordinary care, and hence, though regarded as a warehouseman under Civ. Code, Sec. 1377, requiring at least ordinary care for preservation of thing deposited, by a depositary for hire, it would be liable for the injury sustained.

7. **Same—Injury to Fruit—Proof of Damage—Uniform Damage— Presumption.**

Where apples shipped in a refrigerator car were in first-class condition when placed in the car, and were all subjected to exactly similar conditions until car was opened at destination, when a few of the barrels were opened, contents examined, and all uniformly found to have been seriously damaged, **held**, it will be presumed that all apples in the car were similarly damaged, and carrier could not successfully claim there was no proof of damage except as to barrels examined.

8. **Evidence—Witness—Market Value—Hearsay.**

Where a witness had no independent knowledge of market value of apples at a certain place, his only information being derived from inquiry made by him among certain fruit dealers there, **held**, he was not qualified to testify as to market value, his testimony being hearsay.

9. **Evidence—Relevancy—Market Value—Unmarketable Goods— Selling Price.**

Where, in an action against a carrier for injuries to apples in transportation, it appeared that the apples in their damaged condition had no market value, and plaintiff's agent was only able to get one offer of $2.75 a barrel from one who intended to peddle the apples in the country, to whom he sold them at that price, **held**, that the fact of such sale, assuming that it was fairly made, was admissible to show, prima facie, that such was the actual value of the apples in their injured condition.

Smith, P. J., and McCoy, J., not sitting.

(Opinion filed August 10, 1914.)

Appeal from Circuit Court, Clay County. Hon. ROBERT B. TRIPP, Judge.

Action by J. R. Dunlap against the Great Northern Railway Company, to recover damages for injury to apples during shipment. Verdict for defendant, and it appeals from an order granting plaintiff a new trial. Affirmed.

*Aikens & Judge,* for Appellant.

*Payne & Olson,* for Respondent.

(1) Under point one of the opinion, Appellant cited:

Sheble v. Oregon R. & Nav. Co. (Wash.), 98 Pac. 745; Elliott on Railroads, 2nd Ed. § 1450; Ency. of Ev., 907, and cases cited.

Respondent cited:

6 Cyc. 490, and cases cited; Beard & Sons v. Illinois Central Ry. Co., 78 Ia. 518; 18 Am. St. Rep. 381, 7 L. R. A. 280, 44 N. W. 800; M. K. & T. Ry. Co. et al. v. Mazie et al. (Tex. Civ. App.), 68 S. W. 56; Beede v. Wis. Cen. Ry. Co., 90 Minn. 36, 95 N. W. 454, 101 Am. St. Rep. 390. See note to this case in American State Reports.

(2) Under point two of the opinion, Appellant cited:

Elliott on Railroads, 2nd Ed. § 1452, and cases cited in notes 85 and 86.

Respondent cited:

Laughlin v. C. & N. W. Ry. Co., 28 Wis. 204, 9 Am. R. 493.

(5) Under point five of the opinion, Appellant cited:

§ 1546, Civil Code; § 1377 of the Civil Code.

(6) Under point six of the opinion, Respondent cited:

§§ 1370, 1377 and 1448, Civil Code; Moline, Milburn & Stoddard Co. v. Neville (Nebr.), 72 N. W. 854; Beard & Sons v. Ill. Cen. Ry. Co., supra; Chicago I. & L. Ry. Co. v. Reyman (Ind.), 73 N. E. 587 (on rehearing, 76 N. E. 570).

(7) Under point seven of the opinion, Respondent cited:

Golden Reward Mining Co. v. Buxton Mining Co., 38 C. C. A. 238; Mo. Pac. Ry. Co. v. Thompson & Co., 17 L. R. A. (Tex.) 643; Vietti v. Nesbit, 22 Nev. 490, 41 Pac. 151.

(8) Under point eight of the opinion, Respondent cited:

Parmenter v. Fitzpatrick, 135 N. Y. 190, 31 N. E. 1032; Kendrick v. Beard, 90 Mich. 589, 51 N. W. 645; Raymond Syndicate v. Guttentag, 177 Mass. 562, 59 N. E. 446; Rice on Evidence, Vol.

2, p. 1308; State v. Jackson, 128 Ia. 543, 105 N. W. 51; North-western Fuel Co. v. Mahler, 36 Minn. 166, 30 N. W. 756; Merchants' National Bank v. McDonald, 63 Neb. 363, 89 N. W. 770; Budd v. Van Orden, 33 N. J. Eq. 143; Alabama & Vicksburg Ry. Co. v. Searles, 71 Miss. 744, 16 So. 255.

(9) Under point nine of the opinion, Respondent cited:

Baxter v. Doe, 8 N. E. (Mass.) 415.

POLLEY, J. This appeal is from an order granting a new trial. Respondent, a resident of Vermillion, in this state, shipped a car load of apples billed to himself from Chillicothe, Mo., to Fargo, N. D. When the apples were delivered to him at Fargo, they were found to be in a heated and damaged condition, and this action is brought to recover the loss suffered by respondent because of the damage to the apples.

The facts as disclosed by the record, are as follows: Respondent, a fruit dealer, shipped the apples on the 1st day of October. They were packed in barrels, and were No. 1, hand-picked apples, in perfect condition for packing. They were shipped in a refrigerator car over the Chicago, Burlington & Quincy Railroad. The car was billed to Minneapolis, and a bill of lading issued to respondent. Some time after the car left Chillicothe—the record does not show just when—respondent, at Chillicothe, ordered it to be forwarded to himself at Fargo, N. D. It is not shown when the car reached Minneapolis, but, at the time or shortly after it reached there, it was delivered to appellant by the Chicago, Burlington & Quincy Company, without its ever having been delivered to respondent or in his possession, and no new bill of lading or receipt was issued to respondent by appellant. The car was delivered to appellant on October 12th, and reached Fargo on the morning of October 14th. An agent of respondent met the car at Fargo and requested that it be at once delivered to him; but, the bill of lading having been lost, the car was not finally delivered until the 22d of October. When it was opened it was found that there was no ice in the car. The car was "hot and stuffy"; the apples had heated and become shrunken and shriveled, and partly spoiled, so that they were no longer marketable as first-class apples. The evidence showed that, at the time the car was delivered to respondent's agent at Fargo, apples of the variety and quality these were when they were shipped were worth from $4.50

to $5.25 per barrel; but that, because of their damaged condition, respondent was obliged to sell them for $2.75 per barrel. There was no evidence to show when the apples were damaged, or whether the damage was caused while in the possession of appellant or of the Chicago, Burlington & Quincy Company; nor was there any evidence tending to show the condition of the apples when they came into the hands of the appellant. When the car was delivered to respondent a number of barrels from the middle and each end of the car were broken open. The apples in these barrels were described as rotten, shriveled, and spoiled. A few other barrels were rolled, and it was found that the apples in these barrels had so shriveled that they rattled in the barrels. From the condition of the apples in these barrels it was concluded that they were all damaged, and the entire car load was sold as damaged apples at the price above stated.

Upon these facts, appellant, at the close of respondent's testimony, moved for a directed verdict, upon the grounds: First, that there was no evidence showing the condition of the apples when they came into appellant's possession; second, that the evidence failed to show any want of care of the apples by appellant or neglect in turning them over to respondent; and, third, that the evidence failed to show that any of the apples, except the few that were examined, were damaged. This motion was granted, and the case was dismissed at respondent's cost. Subsequently, upon respondent's motion for a new trial, the verdict and judgment were set aside and a new trial granted.

That the apples were in first-class condition when they left Chillicothe is conceded; that they were in a damaged condition when they were delivered to respondent at Fargo is fairly established by the evidence; and that their condition when delivered to respondent at Fargo resulted from neglect or want of proper care by either the Chicago, Burlington & Quincy Company or appellant, or by both companies, while the apples were in their possession, is not questioned. These facts being established, respondent contends that he is entitled to the benefit of the presumption that, these apples having gone into the hands of the Chicago, Burlington & Quincy Company, the initial carrier, in a certain condition, that condition continued to exist until the apples were delivered to the appellant, the last carrier, unless the contrary be shown, and that

the burden of showing a change of condition rests upon appellant. While appellant does not question the existence of this rule, it contends that the rule is not applicable to the facts in this case. This contention is based upon the fact that, because the car was first billed to respondent at Minneapolis, over the Chicago, Burlington & Quincy road, and then rebilled to Fargo, over respondent's road, the transaction constituted two original shipments, and that it could not be held liable unless respondent showed that the apples were in the same condition when they came into appellant's possession as they were when they were delivered to the Chicago, Burlington & Quincy Company. Thus the question presented for consideration is: Did the billing of the car from Chillicothe to Minneapolis and rebilling from there to Fargo constitute two original shipments, or, under the circumstances in this case, did the transaction constitute a continuous shipment, with the Chicago, Burlington & Quincy Company the initial carrier and the respondent the last carrier?

[1] Under the generally recognized rule for establishing liability for negligence, it would be necessary, before appellant could be held liable for the injury to these apples, for respondent to show that the apples were in an undamaged condition when they were delivered to appellant by the Chicago, Burlington & Quincy Company. But, owing to the exigencies that arise in this class of cases, an exception has been made to the general rule. The exception is that, where property has been placed in the hands of a common carrier for transportation in good order and condition, that condition is presumed to continue to exist until the contrary is shown; and, where such property has been transported by successive and connecting carriers and delivered to the consignee in a damaged condition, it will be presumed to have received the injury while in the possession of the last carrier. The reason for this rule is clearly stated by Johnson, J., in Smith v. N. Y. C. Ry. Co., 43 Barb. (N. Y.) 225, in the following language:

"Unless this rule is to be applied to goods delivered to be transported over several connecting railroads, there would be no safety to the owner. It would often be impossible for him to prove at what point or in the hands of which company the injury happened. But give to such party the benefit of the presumption that the goods he has delivered in good order in such case con-

tinued so until they came to the possession of the company which delivers them at the place of destination in a damaged condition, and his rights will be completely protected. The burthen is then shifted upon the latter company of proving that such goods came to its possession in a damaged condition, by way of defense. This proof the latter company can always make much more easily and readily than the converse can be proved by the owner. This is in perfect harmony with a well-settled rule of law, as an exception to the general rule. The general rule undoubtedly is that the burden of proof is always upon the party who asserts the existence of any fact which infers legal responsibility. But the exception is equally well established that in every case the onus probandi lies on the party who is interested to support his case by a particular fact which lies more particularly within his knowledge, or of which he must be supposed to be cognizant. If the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party. 1 Greenl. Ev. § 79. 1 Stark. Ev. 362-365. Wills on Circumstantial Ev. 183, 184. This applies in all civil cases. A familiar instance is the action to recover the penalty for the violation of the excise law. And it applies also in criminal cases in weighing the evidence, after slight evidence has been given, sufficient to raise the presumption that the allegation is true, in the absence of any evidence to the contrary. In this case, and all cases of like nature, I think it is enough for the owner to show that he delivered the property to the connecting road in good condition, and that the burthen is then cast upon the company delivering the goods injured of proving that they were not injured in their possession, or that they came to their possession thus injured. This evidence in almost every case is all that the owner can possibly give, inasmuch as he is not supposed to accompany his property in the transit."

And, again, in Sheble v. Oregon R. & Navigation Co., 51 Wash. 359, 98 Pac. 745, it is said:

"This presumption becomes necessary to protect the shippers' rights and to save them from the necessity of making proof, which, under the circumstances, would be almost, if not entirely, impossible for them to make; they having no jurisdiction or observation of the goods during the transit, while the care and custody and

observation of the goods have been in the hands of the respective
carriers."

And to the same effect is Laughlin et al. v. C. & N. W. Ry.
Co., 28 Wis. 204, 9 Am. Rep. 493, a leading case on this question.

The reason for the rule, then, is that the property being trans-
ported is continuously in the possession of, and under the juris-
diction of, the various carriers, and all the facts relative to the in-
jury lie peculiarly within the knowledge of the carriers.

[2] Tested by this rule, the transaction involved in this case
should be held to be a continuous shipment from Chillicothe to
Fargo, and the appellant held liable as a connecting carrier. While
the car was originally billed to Minneapolis and rebilled from there
to Fargo, it was continually in the possession of, and under the
jurisdiction of, the carriers concerned. Respondent did not accom-
pany the car, and had no control over it at all other than to fix
its destination.

[3] The shipment was contained in a refrigerator car—a car
especially designed for carrying perishable property. From this
fact appellant is charged with knowledge that the contents of the
car required ventilation and regulation of temperature. By accept-
ing the car at Minneapolis without opening or examining its con-
tents, it assumed the risk, as against respondent, of its having been
kept properly cooled and ventilated to that time; and, by undertak-
ing to transport it to Fargo, it assumed the obligation of keeping it
properly cooled and ventilated until it was delivered to respondent.
Shea v. C., R. I. & P. Ry. Co., 66 Minn. 102, 68 N. W. 608; Beard
et al. v. Ill. C. Ry. Co., 79 Iowa, 518, 44 N. W. 800, 7 L. R. A. 280,
18 Am. St. Rep. 381.

[4] Appellant, in its answer, alleged that the car reached
Fargo on or about October 14th, but that respondent failed and
refused to accept and receive the same until on or about the 23d
of October, and that, if any damage was sustained between the
14th and 23d days of October, it was caused by respondent's neg-
lect in not accepting the same.

The delay in delivering the car resulted from respondent's
loss of the bill of lading. Under the provisions of section 1557,
Civ. Code, appellant had the right to retain the car and contents
until the bill of lading was surrendered or indemnity was fur-

nished, but it was not relieved from its duty to properly protect and care for the property in the meantime.

[5] Appellant contends that, after the car reached its destination and respondent had received notice that it was there, its liability as a carrier ended, and that, from that time, its relation to the contents of the car became that of warehouseman, as provided by section 1547, Civ. Code, and its obligation fixed by section 1377, Civ. Code. This contention is not supported by the facts in this case. No part of the contents of the car was ever placed in a warehouse of any kind, and appellant collected demurrage from respondent during the delay in unloading the car. But, if the car itself were to be treated as a warehouse, as appellant contended it should be, and appellant as a depositary for hire, as provided by section 1377, Civ. Code, appellant would still be liable.

[6] Section 1377 requires a depositary for hire to use at least ordinary care for the preservation of the thing deposited. But what constitutes ordinary care in a particular case depends upon the nature of the thing being cared for, and ordinary care for the preservation of apples in a refrigerator car would be to see that they were not permitted to decay for want of ice and ventilation. Moreover, in this case there was no evidence to show whether the injury to the apples took place while the car was in transit or after it had reached its destination.

[7] The contention is made by the appellant that, as only a few of the barrels were opened and contents examined, there was no evidence to show that all the apples, or any of them except what were in the broken barrels, were injured. This argument is without merit. The evidence tends to show that the apples were all in the same condition when they were placed in the car; that they were all subjected to exactly the same conditions from that time until the car was opened at Fargo. From this the inference is that they were all in the same condition then.

[8] On the trial respondent undertook to show, by the testimony of his agent, who went to Fargo to take charge of the car of apples, the market value of apples such as those were at that time. This evidence was objected to, on the ground that it was incompetent, immaterial, and that no proper foundation had been laid. The objection was sustained, and, we believe, rightly so. The witness' only qualification for answering the question was

based upon the inquiry made by him among certain fruit dealers in Fargo. Conceding the evidence sought to be elicited to be competent and material, this did not qualify him to testify as to the market value of the apples. The witness had no independent knowledge of the matter, and his testimony would have been pure hearsay.

[9] Upon the trial respondent also offered to show by the said witness that he interviewed each of the regular dealers in Fargo and tried to sell apples of the kind he found in the car to each of said dealers, but that he was unable to get but one offer of $2.75 per barrel, which was from a party who wished to peddle them through the country; that he accepted this offer, sold the apples at that price, and that such price was the fair market value of the apples. This evidence was objected to upon the ground that it was incompetent, immaterial, and not the proper measure of damage. This objection was sustained, for the reason, as stated by the court, that the witness had not shown himself qualified to testify as to the fair market value of the property sold there at that time. This evidence should have been admitted. The purpose of it was to show the value of the apples by showing what they sold for at that time. Under the general rule it would have been incumbent upon respondent to have shown, by some one familiar with the market, what the market value of the apples was in that market at that time. But it does not appear that apples, in the condition those were at that time, were a marketable commodity or that they had any market value. From the fact that not one of the regular fruit dealers who constituted the market at that place would take the apples or make an offer for them at any price at least tends to show that they were not marketable. On the other hand, the fact that they sold for $2.75 per barrel—assuming that the sale was fairly made—proves, prima facie at least, that that was their actual value.

This, of course, would not be conclusive against the appellant nor preclude it from showing, if it could do so, that the apples were worth more than that amount. But where the sale is fairly made for the highest price that could be had, and, as is the case here, by one to whose interest it was to sell for the highest price obtainable, such selling price is competent evidence of the value of the article sold. This seems to be the reasonable rule in such

cases, and it finds ample support in the authorities. In Budd v. Van Orden, 33 N. J. Eq. 143, the court, in discussing this subject, uses the following appropriate language:

"The only absolute test we can have of the value of a merchantable article is what it has been sold for at a fair sale. All other means of ascertaining the value of a merchantable commodity are speculative, and must, to a greater or less extent, be uncertain. A sale is a demonstration of the fact, while estimates, even by the best judges, are simply matters of opinion, which, at best, are only approaches to the fact."        ,

And, in Alabama & V. Ry. Co. v. Searls, 71 Miss. 744, 16 South. 255, a case involving the value of a shipment of oats that had been damaged in transit by the negligence of the railroad company, the court said:

"The price at which the damaged oats were sold, after a fair trial to obtain the best price, was competent evidence of their value. We suppose there was no market value for such articles; and the value of an article not quoted on the market, and not dealt in generally, is best shown by what it brings at a fair sale"—citing Sullivan v. Lear, 23 Fla. 463, 2 South. 846, 11 Am. St. Rep. 388; 2 Price on Evidence, § 552.

Other cases supporting this principle are: Parmenter v. Fitzpatrick, 135 N. Y. 190, 31 N. E. 1032; In re Johnston, 144 N. Y. 563, 39 N. E. 643; Kendrick v. Beard, 90 Mich. 589, 51 N. W. 645; Raymond Syndicate v. Guttentag, 177 Mass. 562, 59 N. E. 446; Cole v. Rankin (Tenn. Ch. App.) 42 S. W. 72; Farnsworth v. Miller (N. J.) 60 Atl. 1100; State v. Jackson, 128 Iowa, 543, 105 N. W. 51; Northwestern Fuel Co. v. Mahler, 36 Minn. 166, 30 N. W. 756; Merchants' National Bank v. McDonald, 63 Neb. 363, 88 N. W. 492, 89 N. W. 770.

From the foregoing it follows that there was no error in awarding a new trial, and the order appealed from is affirmed.

SMITH, P. J., and McCOY, J., not sitting.