## People of State of Illinois, Defendant in Error, v. Vallis La Verne Dunsworth, Plaintiff in Error.

### Gen. No. 9,980.

Opinion filed July 20, 1944.

MAX A. WESTON, State's Attorney, and JOHN E. SYPE, Assistant State's Attorney, for defendant in error.

JAMES BERRY, of Rockford, for plaintiff in error.

MR. JUSTICE WOLFE delivered the opinion of the court.

On October 19, 1943, the state's attorney of Winnebago county, filed an information in the county court of said county charging, "Vallis La Verne Dunsworth with receiving and aiding in concealing stolen property to wit: 45 United States Gasoline Rationing Coupons, of the value of $15.00 or less, of the personal goods and chattels and property of one, Dale Blim-

ling." It is alleged that the crime was committed in Winnebago county, Illinois.

The defendant was arraigned and entered a plea of "not guilty." The case was tried before a jury who found the defendant guilty and recommended a fine of $100 and 30 days in the county jail. At the close of the plaintiff's case and also at the close of all of the evidence in the case, there was a motion made by the defendant's attorney for a directed verdict. The said motion was overruled by the court. The defendant also entered a motion to strike all the testimony in regard to the burglary of the gasoline filling station of Dale Blimling, and the testimony of Elzie Harvey in regard to selling gasoline coupons to the defendant. This motion was likewise overruled. The defendant was sentenced to pay a fine of $100 and committed to jail for 30 days. It is from this judgment that a writ of error is perfected.

The first witness called on behalf of the People was Dale Blimling who testified that he was the filling station operator, and that his place of business was burglarized and quite a number of gasoline coupons were stolen from his premises. Elzie Edward Harvey, Jr., testified that he, together with other boys, burglarized the Blimling garage, and stole a number of gasoline coupons. This evidence is not disputed. Elzie Harvey then testified that he, together with one of the boys who was associated with him in the burglary, drove to the filling station of the defendant, and traded a part of the gasoline coupons for gas, and sold the others to the defendant for $10 cash. Harvey is corroborated in part by Ralph Gledhill. Charles Smith testified that he accompanied Harvey to Dunsworth's garage, and when they drove up to the station, Harvey opened the glove department of the car and took out some gas coupons; that Dunsworth was on the right-hand side of the car with one foot on the running board; that Dunsworth said, "I guess I can

use some of them." Then Harvey got out of the car and took the coupons and Dunsworth got out and they went into the station alone. Dunsworth testified in his own behalf and denied buying or having anything to do with the stolen gasoline coupons.

It is now insisted that the trial court erred in not directing a verdict in favor of the defendant, Dunsworth. He contends seriously that the evidence relative to the burglary of the Blimling gasoline station should have been stricken from the record. Before the defendant could be convicted of receiving stolen property, it must be shown that the gasoline coupons in question were actually stolen from Blimling, so we think that all the evidence relative to the burglarizing of the Blimling filling station, and what was stolen from Blimling, was properly admitted. The evidence shows that the same gasoline coupons were traded and sold to the defendant.

The defendant also insists that the evidence for the conviction should not have been sustained, because Harvey was an accomplice, and his testimony should be received with great caution. This, no doubt, is a correct statement to the law, but the jury was properly instructed relative to the testimony of an accomplice. There is no question about the gasoline coupons being stolen. The accomplice was corroborated by two other boys. While it is true that the other boys confessed to other burglaries, the jury in considering the testimony, decided the issues in favor of the People, and from a review of the testimony, we think they were justified in their findings.

The plaintiff in error contends that the United States gasoline rationing coupons are not property, and are of no value; therefore, not subject to larceny, and he cannot be found guilty of receiving property that is not a subject of larceny. In a prosecution for larceny, proof of special ownership, or interest, or possession of the property, is sufficient as against the

defendant charged with a larceny of the property. In the present case there is no question but what Mr. Blimling had the actual and legal custody of the coupons at the time his place was burglarized. *People v. Fitzgerald,* 297 Ill. 264.

It is also argued that Blimling suffered no loss by reason of the coupons being stolen from him. This can have no bearing on the merits of this suit. The same question was before the Supreme Court in the case of *People v. Racine,* 362 Ill. 602, 604. Racine was being prosecuted for having received some stolen stock certificates. It was contended that because Higgins, the owner, had received new certificates, that the old certificates became merely scraps of paper and were of no value. In the opinion it is stated: "It is first argued that the People failed to prove any loss on the part of Higgins. It was shown that he received new stock certificates to replace the stolen property and had also received dividends on his stock from time to time without loss from the theft. On this account it is claimed that the stock certificates were mere pieces of paper without value and did not represent property in such way as would bring Racine within the statute. This position is untenable. A stock certificate is an instrument of value to the owner, and when taken from him by larceny or robbery the act constitutes a crime. The value of the property at the time of the theft or robbery is the determining factor. The crime is not wiped out or lessened in extent if the stolen property subsequently loses value or has been replaced."

It is insisted in the present case that the larceny statute is not broad enough to cover the crime charged against the defendant, and he insists that the gasoline coupons are without value, and therefore, he cannot be convicted. In the Am. Encyc. of Law, vol. 2, page 750, it is stated: "To be a subject of larceny, a thing taken must be of some value, but the least value

is sufficient. It is larceny at common law to steal a piece of paper, or anything else that is property, although it may be of less value than the least coin.'' Cited in support of this text is the case of *Wolverton v. Commonwealth*, 75 Va. 909. In this case, the defendant was indicted for stealing a padlock of the value of thirty cents. He was convicted and the case was appealed to the court of appeals of the State of Virginia. The last paragraph of the opinion is as follows: ''At the common law, an article to be the subject of larceny must be of some value. It is sufficient, however, it is said, if it be worth less than the smallest coin known to the law. 1 Whart. Crim. Law, Sec. 632; 1 Bishop Crim. Law, Sec. 224. The indictment charges, that the lock was of the value of thirty cents. It is assigned that there was no proof of the value. It is true there was no ·distinct proof of a specific value, nor was such proof necessary. But the evidence, nevertheless, shows that it was of some value. It was used for fastening the door on which it was hanging. When taken, the key was in it. That was sufficient to show that it was of some value. See *State v. Slack*, 1 Bailey (So. Car.), 330, 343; *Houston v. State*, 8 English (Ark. Rep.), 66.''

In the case of *Keller v. United States*, 168 Fed. 697, the first paragraph of the opinion states the charge and the ruling of the court, which is as follows: ''The indictment charged plaintiff in error with feloniously taking and carrying away 'six blank checks with stubs attached, each of the value of one cent, of the goods and personal property of the. United States.' Section 5456, Rev. St. (U. S. Comp. St. 1901, p. 3683), makes it a felony to steal 'any kind or description of property belonging to the United States.' In support of the assignment that the court erred in overruling the demurrer to the indictment, the contention is made that 'blank checks' do not constitute property. While the promise or the grant or the obligation that may

be expressed on paper is not a subject of larceny, it seems to us as futile to claim that blank checks are not within section 5456 as it would be to say that the 'legal blanks' in a lawyer's office or at a stationer's are not susceptible of ownership.''

In the case of the *People v. Caridis,* a California case (29 Cal. App. 166, 154 Pac. 1061), the defendant was charged with stealing a lottery ticket of the value of $1,250. The court sustained a demurrer to the indictment, and it was carried to the district court of appeals where the court sustained the decision of the lower court in holding that the lottery ticket was not a subject of grand larceny, but at the conclusion of their opinion they have this to say : '' (4) Considered as a mere piece of paper, the lottery ticket in question, possessed perhaps some slight intrinsic value, which, however small, would have sufficed to make the wrongful taking of it petit larceny, and, if that had been the charge preferred against the defendant, it doubtless would have stood the test of demurrer. 1 McClain on Criminal Law, Sec. 543.''

In the case of *Kraus v. City of Cleveland,* 135 Ohio St. 43, 19 N. E. (2nd) 159, decided by the Supreme Court of Ohio, the question for decision was whether certain mechanical machines where a coin is inserted, were gambling devices. It was contended by the owners it was simply a machine for amusement. It was shown to be a device which, if a coin was deposited, it returns the players quite an amount of amusement, and in addition thereto, tokens as a reward, depending upon chance. It was contended by the owners that these tokens are of no value, and under the terms of the ordinance in question, have no valuation, and that they were of no value to the player. The court in their opinion, use this language : ''However, for a game to constitute gambling, it must be one which is played for gain of money or a thing of value as the prize or reward.

"Appellees contend, substantially, that the only thing the machine affords to the player is amusement; that the tokens emitted have no intrinsic value; that under the terms of the ordinance, the tokens may not be replayed or redeemed; that, therefore, they have no value to the player; and that anything which has no value cannot be said to constitute a prize or reward. . . . .

"The minimum amount of amusement offered in each play is that which is offered without any return of tokens. Whatever amusement is offered through the return of tokens is added amusement which a player has an uncertain chance of receiving. This added amount of amusement, the procurement of which is dependent wholly upon chance, is a thing of value, the lure extended by the device to the player."

The Supreme Court of the United States in the case of *Jolly v. United States,* 170 U. S. 402, 42 L. Ed. 1085, 18 Sup. Ct. 624, sustained a conviction of the defendant for stealing postage stamps that had not been issued or sold, but in possession of the government. The opinion held that the criminal statute was broad enough to hold the defendant for stealing the postage stamps from the government. In the course of their opinion, they use this language: "The statute from which Sec. 5456, Revised Statutes, was taken was passed March 2, 1867, (14 Stat. at L. 557, chap. 193), and the same all embracing language is found therein. 'Any kind or description of personal property' is the phrase used. It was no doubt passed to enlarge the common law in relation to the subjects of larceny. Although at common law written instruments of any description were not the subject of larceny, as not being personal goods; that is, movables having an intrinsic value, yet although such instruments could not in strictness be stolen, the paper or parchment on which they were written might be, and prosecutions for petty thefts of this description frequently took

place in England. *People v. Loomis,* 4 Denio, 380; 3 Chitty, Crim. L. 932; 2 Russell, Crimes, 74–80; *Clark's* Case (*Rex v. Clark*), Russ. & R. C. C. 181; *Vyse's* Case (*Rex v. Vyse*), Moody, C. C. 218; *Reg. v. Morris,* 9 Car. & P. 347; *Reg. v. Rodway,* 9 Car. & P. 784; *Rex v. Bingley,* 5 Car. & P. 602; *Rex v. Mead,* 4 Car. & P. 535. To make stamps, while unissued and in the hands of the government, the subject of larceny is not, therefore, any very great departure from the general doctrine of the common law.''

In the case of *People v. Wilson,* 298 Ill. 257, the defendant was convicted of the crime of burglary by breaking into a building and stealing whisky, while the National Prohibition Act was in effect. It was claimed by the defendant that the whisky had no market value, and was not a subject to larceny, therefore, the conviction was illegal. The court held that burglary may be committed where personal property, which is the subject of ownership is taken, and the fact that the property is kept for an unlawful purpose, does not change the nature of the crime, and further stated that it had an actual value, whether it had a market value or not, and was the subject of larceny.

It is our conclusion that the coupons in question did possess an intrinsic value, and were the subject of petty larceny. We find no reversible error in the case, and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*