People of the State of Illinois, Appellee, v. Chester Price, Appellant.

Gen. No. 49,730.

First District, Third Division.

March 16, 1967.

James H. DeVries, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Carmen V. Speranza, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendant appeals his conviction of the crime of theft of an automobile with a value of more than $150, for which he was sentenced to a term in the penitentiary of not less than four years nor more than eight years.

The defendant waived a jury and was tried by the court.

The defendant contends that his conviction is unlawful because he was convicted of a crime for which he was not indicted, and all elements of the offense were not proved beyond a reasonable doubt.

The evidence showed that on January 6, 1964, Robert Ross parked a 1960 four-door white Chevrolet, which he owned, on Oak Street in the city of Chicago about 10:00 or 10:30 p. m. Upon his return between 5:30 and 6:00 a. m. on January 7, 1964, he found the car gone. He did not give anyone permission to use his automobile.

On January 10, 1964, a police officer went to 1101 East 65th Street, Chicago, Illinois, pursuant to a radio assignment. When he arrived at that address he found other police officers had arrived before him and he saw the defendant, Chester Price, getting out of a parked 1960 Chevrolet. A police officer asked the defendant who owned the automobile, and, according to the officer, the defendant responded that it was his automobile. The defendant was then asked if he had anything to prove that it was his car and he produced a sales contract bearing the name of Robert Ross. The officer also testified that Price stated that the automobile belonged to a friend of his named Robert Ross, who had loaned it to him at approximately 8:00 a. m. on January 10th. The officer then testified that the defendant made several phone calls but then told the officer that he was unable to contact Mr. Ross. The officer examined the automobile and observed that there was a key in the ignition on a key ring and that the key ring contained four keys. The officer testified that the defendant stated that he had been attempting to remove the rear seat from the automobile in order to get at the spare tire because the trunk key was broken off in the trunk. None of the four keys on the key ring would open the trunk lock, and the officer testified that there was no key broken off in the trunk lock.

At the police station the defendant had a conversation with a detective of the Chicago Police Department between 11:00 and 12:00 p. m. on January 10, 1964. According to the detective's testimony, the defendant stated that he had driven the automobile in question, and that he had obtained the car from Robert Ross two days previously. He further testified that the defendant stated that he had met Mr. Ross at taverns on the north side and that Mr. Ross told him where the automobile was parked on Oak Street, that the ignition was open and that he could turn it on and drive it away. About one hour after

the detective's conversation with the defendant, Ross arrived. Ross told the detective that he had never seen Chester Price before, and that he had not loaned his automobile to anyone.

The defendant testified that on January 10, 1964, he had left his grandmother's at 910 North Cleveland at 5:30 or 6:00 p. m. and had taken the elevated to his sister's apartment at 1103 East 65th Street where he arrived at approximately 6:30 or 7:00 p. m. He remained at his sister's apartment until about 8:30 p. m. when he left at his sister's request to go to the store for milk for her children. When he came out of the apartment building a police car stopped and policemen got out and asked him whose car was parked by the curb. Defendant testified that he said he did not know; that he had never seen the car in question before and that he had never been in the car. He also stated that he was never in possession of the sales contract but that the police had showed it to him. His testimony further was that the keys were shown to him and that he had told the police officers that they did not belong to him. Defendant stated that he did not own an automobile and did not have a driver's license but he did know how to drive. No evidence of value of the automobile was introduced.

The first point raised by the defendant is that his conviction is unlawful because he was convicted of a crime for which he was not indicted. The defendant's theory is that he was indicted for the theft of an automobile having a value of more than $100, and that he was convicted of the theft of an automobile having a value of more than $150. The indictment was in two counts. The first count alleged,

" . . . that on January 7th, 1964, at and within said County Chester L. Price committed the offense of theft, in that he, knowingly obtained unauthorized control over an automobile, of the value of more than

114

one hundred dollars, the property of Robert Ross, intending to deprive said Robert Ross permanently of the use and benefit of said property, in violation of Chapter 38, Section 16-1, of Illinois Revised Statutes 1963, . . ."

The second count of the indictment charged the defendant with the offense of criminal trespass to vehicles, in violation of chapter 38, section 21-2, of the Illinois Revised Statutes 1963. The court made no finding relative to the second count. The court found the defendant guilty of theft of automobile, property value more than $150, in manner and form as charged in the indictment. Section 16-1 of the Criminal Code, (Ill Rev Stats 1963, c 38, par 16-1) reads as follows:

"Sec. 16-1. Theft.) A person commits theft when he knowingly:

(a) Obtains or exerts unauthorized control over property of the owner; or

(b) Obtains by deception control over property of the owner; or

(c) Obtains by threat control over property of the owner; or

(d) Obtains control over stolen property knowing the property to have been stolen by another, and

(1) Intends to deprive the owner permanently of the use or benefit of the property; or

(2) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or

(3) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit.

Penalty.

115

A person first convicted of theft of property not from the person and not exceeding $150 in value shall be fined not to exceed $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both. A person convicted of such theft a second or subsequent time, or after a prior conviction of any type of theft, shall be imprisoned in the penitentiary from one to 5 years. A person convicted of theft of property from the person or exceeding $150 in value shall be imprisoned in the penitentiary from one to 10 years."

The defendant argues that since he was convicted of theft of property having a value of more than $150, and the indictment charged him with theft of an automobile having a value of more than $100, he was not convicted of the crime for which he was indicted.

In People v. Jackson, 66 Ill App2d 276, 214 NE2d 316, on page 280 the court, in referring to section 16–1 of chapter 38, said the following:

"The legislature did not, as the defendant argues, attempt to create the crime of theft from the person in the penalty portion of section 16–1 rather than in the descriptive portion. The penalty portion merely makes distinctions between different grades of theft and provides aggravated penalties for aggravated degrees and forms of theft. Thus, one who steals more than $150 or who steals from the person of another may be imprisoned in the penitentiary; a penitentiary sentence is also provided for one convicted of repetitive thieving, while one who is convicted for the first time of theft of less than $150 is subject to imprisonment in a different institution, or to a fine, or both."

In People v. Kelly, 66 Ill App2d 204, 214 NE2d 290, the court on page 210 said:

116

"(4) It would appear that the term 'grand theft' and the allegations and findings as to property value employed throughout these proceedings have misled the State's Attorney into the belief that defendant's conviction may not stand in the absence of proof that the stolen automobile exceeded $150 in value. This is not true, however, as the only crime with which we are here concerned is that of 'theft.' Theft is committed by the stealing of 'anything of value,' regardless of the amount thereof. Ill Rev Stats, c 38, sec 15–1. The particular value of the property relates only to the nature and extent of the penalty which may properly be imposed.

"(5) When the State seeks the maximum penalty permitted by the statute, by alleging in the indictment a property value in excess of $150 (as in this case), and the proof fails as to value only, it does not follow that the crime of 'theft' has not been proved. The court may take judicial notice of the fact that a 1959 Chevrolet driveable in 1964 is a thing of some value even though it may not, without more proof, conclude that the value exceeds $150. People v. Dunsworth, 323 Ill App 470, 474–478, 56 NE2d 52."

The question which then confronts us is not whether the offense of theft has been proven but whether the court had the right to find the defendant guilty of theft of an automobile exceeding $150 in value when the indictment charged him with theft of an automobile having a value of more than $100, and there was no evidence offered as to the value of the car.

 The defendant argues that he cannot be convicted of a crime for which he was not indicted and cites several cases. However, the crime for which the defendant was indicted in this case was theft. The value of the stolen property goes only to the penalty which may be imposed,

117

as was pointed out in People v. Jackson, supra. Since we conclude that the crime of theft had been proven but that the indictment failed to charge that the value exceeded $150, and there was no evidence of the car's value, the court had no right to impose the sentence of 4 to 8 years, as was done in this case. In the penalty paragraph of section 16–1 a person who has been convicted of theft of property not exceeding $150 in value may be fined not to exceed $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both. However, if a person is convicted of such a theft a second or subsequent time, or after a prior conviction of any type of theft, he shall be imprisoned in the penitentiary from one to 5 years. Where the value of the property stolen exceeds $150 the penalty is imprisonment in the penitentiary from one to 10 years.

Section 15–1 of chapter 38 defines property as meaning anything of value.

This court will take judicial notice of the fact that a 1960 Chevrolet in 1964 had some value, but since the indictment did not charge that it had a value in excess of $150, and there was no evidence of value, the court could not impose the penalty provided by statute for theft of property having a value in excess of $150.

The defendant also argues that the element of intent was not proven beyond a reasonable doubt. From the facts heretofore stated it appears that when the defendant was arrested at 1101 East 65th Street he claimed that he owned the car. He then produced a sales contract with the name of Robert Ross on it and claimed he had borrowed the car from Ross. He told another police officer that he had borrowed the car two days prior from Ross. The defendant, however, testified that he was never in the automobile; that he did not claim ownership nor have possession of the car, and that he never gave the sales contract to the police officer. The defendant argues that if he had intended to permanently de-

prive Robert Ross of the use or benefit of his automobile he would have taken steps to prevent the car from being recognized. The car was found by the police at 1101 East 65th Street, many miles from Oak Street where the owner had parked it four days previously. How this defendant, who first claimed that he was the owner, then the bailee, and then completely denied any knowledge of the car, can now contend that no intent was proven is difficult to understand.

In People v. Heaton, 415 Ill 43, 112 NE2d 131, the court said that what was within the confines of a man's mind cannot always be accurately ascertained, but true intention can be arrived at as nearly as possible by an examination of the facts and circumstances and from them draw a parallel measured by the standards of reasonable men. On page 46 the court said:

> "We held in People v. Baker, 365 Ill 328, that intention may be proved by deduction from acts committed and from circumstances in evidence. It was, therefore, as laid down in People v. Pastel, 306 Ill 565, a question of fact for the jury whether the automobile was taken with a felonious intent to steal, and whether there was an intention on the part of the plaintiff in error to return the automobile. If it appears that the taker kept the goods as his own until his apprehension, such fact has a material bearing upon that intention. There is no fact or circumstance indicating an intention upon the part of the plaintiff in error to return the auto to its true owner, except the fact that he was promptly apprehended."

▮ The question of intent in this case was one for the trier of the fact to determine, and from a reading of the record we cannot say that the trial court was in error in concluding that the necessary intent was proven from its examination of the facts and circumstances and the inferences which may properly be drawn therefrom.

119

The trial court was, as before noted, in error in finding the defendant guilty of theft of property exceeding the value of $150. However, the court properly found the defendant guilty of theft.

During the trial evidence was introduced by the People showing a record of the defendant as having previously been convicted of auto larceny in 1957 and sentenced to the Illinois State Penitentiary from two to five years. After the finding of guilty, the trial court heard in aggravation the prior record of the defendant, showing that in 1957 he was also convicted of auto larceny and placed on three years probation. In 1963 he was sentenced to one year in the House of Correction for petty theft. In 1960 the defendant was incarcerated for violating parole, the violation being auto larceny, and in 1962 he received one year in Vandalia for trespassing and receiving stolen property.

The trial court erred only in the sentencing of the defendant and not in the guilty finding for the offense of theft. Because the defendant has been previously convicted of theft, we fix his sentence under section 16–1 of the Criminal Code, (Ill Rev Stats 1963, c 38, par 16–1) at one to 5 years in the penitentiary.

The conviction of the defendant for the crime of theft is affirmed and the sentence is fixed at one to five years in the Illinois penitentiary.

Conviction affirmed; sentence fixed by this court.

SCHWARTZ and DEMPSEY, JJ., concur.