306 So.2d 104 (1974)
Ozzie Joseph NEGRON and Teresa Negron, Petitioners,
v.
STATE of Florida, Respondent.
No. 45109.
Supreme Court of Florida.
November 13, 1974.
Rehearing Denied February 4, 1975.
*105 Aram P. Goshgarian, Miami Beach, for petitioners.
Robert L. Shevin, Atty. Gen., and Frank B. Kessler, Asst. Atty. Gen., for respondent.
PER CURIAM.
We review by writ of conflict certiorari the per curiam decision of the District Court of Appeal, Fourth District, in the consolidated appeals of Ozzie and Teresa Negron v. State, 289 So.2d 61 (1974).
Petitioners, Ozzie and Teresa Negron, were charged with grand larceny by information filed May 18, 1972 which alleged that petitioners had stolen fishing reels, drill sets and wrench sets of a value of more than $100 from Sears, Roebuck and Company.
It appears from the record proper both of the defendants were noticed on June 12, 1972 for trial to be held July 20, 1972. The case was continued by joint motions of the State and defendants. Thereafter, a notice was entered on August 4, 1972 setting the case of each defendant for trial on September 7, 1972. The trial was continued at the instance of the State. Again on September 25, 1972 notice was entered setting trial of the cause on October 27, 1972. That trial date was continued upon joint motion of the State and defendants. On November 8, 1972 the case was set for trial to be had on December 8, 1972 for each of the defendants. That trial date was on December 6, 1972 continued by motion of the defendants. Next, on December 19, 1972 the case as to each of the defendants was set for trial to be had on January 17, 1973; that trial date was continued at the instance of the State because of the unavailability of a material witness. However, on January 29, 1973 the defendant Ozzie Negron was noticed for trial on February 23, 1973. The trial on that date was continued at the instance of only the defendant Ozzie Negron. A new notice of trial, dated March 1, 1973, was again entered as to only the defendant Ozzie Negron. From the continuance of the trial on January 17, 1973 no setting of the case of the defendant Teresa Negron occurred until March 9, 1973 and that set the trial for April 9, 1973. Trial was not had on the date last aforesaid as the State sought and obtained a continuance. This resulted in a further entry on April 9, 1973 of a notice setting trial for May 3, 1973 for each of the defendants. From the continuance of January 17, 1973 until the trial was had on May 3, 1973, the defendant Teresa Negron neither sought nor obtained any continuance or delay.
On May 3, 1973, the date that trial finally began, Teresa moved for discharge pursuant to Rule 3.191, Cr.PR, on the ground that after the continuance of the January 17, 1973 trial date more than a reasonable time elapsed within which the State failed to set, or reset, her case for trial, relying upon State ex rel. Butler v. Cullen (Fla. 1971), 253 So.2d 861. The motion for her discharge was denied; trial went forward *106 and both petitioners were convicted of grand larceny. Ozzie was sentenced to five years and Teresa to two and one-half years in prison.
The District Court of Appeal, Fourth District, affirmed the convictions, per curiam without opinion.
It appears from the record that conflict of decisions exists as to the petitioner Teresa Negron upon the question whether she was entitled to a discharge because of denial to her of a speedy trial. Under the rationale of State ex rel. Butler v. Cullen, supra, we conclude from the record proper that her motion should have been granted. There was sufficient delay involved in the State's failure to proceed to trial after continuance was granted to it warranting the granting of her motion.
After the State's motion for continuance was granted and the case was re-set for trial, Teresa sought no delays of trial and made no motions for continuance or other dilatory motions. At all times she was ready and available for trial thereafter. Therefore, it is clear more than 100 days elapsed since the continuance of the January 17, 1973 trial date and Teresa's trial on May 3, 1973, and none of this lapsed time appears from the record attributable to Teresa.
It appears to us that the following language from State ex rel. Butler v. Cullen, supra, is applicable to Teresa's speedy trial situation:
"In other words, the purpose of the Speedy Trial rule is to implement the practice and procedure by which a defendant may seek and be guaranteed his speedy trial. When the time limitations set forth in the rule were waived by petitioners seeking a continuance, then it became incumbent upon the trial court to set a trial date far enough in advance to allow the petitioners adequate time for preparation of their defenses, but, also, guaranteeing to the petitioners their constitutional right to a speedy trial. The facts and circumstances of each case may differ.
* * * * * *
"When the continuance was granted and the time limitations set forth in the rule were no longer applicable, the trial judge was nevertheless required to grant petitioners a speedy trial. In the absence of the time limitations specified in the Speedy Trial rule, the right to a speedy trial is necessarily relative. It is consistent with delays and the question of whether a trial date affords petitioners a speedy trial must be determined in the light of the circumstances of the particular case as a matter of judicial discretion. The mere lapse of time before trial is not the only factor to be considered under such circumstances. Any unreasonable delay arising from the negligence of the prosecution without fault or consent by the accused violates the guaranty of a speedy trial."
We note that speedy trial Rule 3.191 which was quoted in State ex rel. Butler v. Cullen, supra, reads in part as follows:
"(d)(3). Continuances; Effect on Motion. 
"If trial of the accused does not commence within the periods of time established by this rule, a pending motion for discharge shall be granted by the court unless it is shown that (i) a time extension has been ordered as provided in § (d)(2), or (ii) the failure to hold trial is due to the unexcused actions or unexcused decisions of the accused, or of a coedefendant in the same trial. If a continuance or delay is attributable to the accused and is not excused, the pending motion for discharge shall on motion by the State be voidable by the court in the interests of justice; provided, however, the trial shall be scheduled and commence within 90 days." (Emphasis supplied.) In re Florida Rules of Criminal Procedure, 245 So.2d 33, 36 (Fla. 1971). Page 107>
It appears to us as a matter of law when the quoted portion of Rule 3.191 and Section 16, Article I, Declaration of Rights, State Constitution, are applied to the record proper situation above related that Teresa was entitled to a speedy trial discharge under the rationale of State ex rel. Butler v. Cullen.
Not only was there a delay of trial which was unreasonable under any meaningful application of Section 16, but in point of time the trial was not commenced under the rule within 90 days from the continuance of the January 17, 1973 trial date, although the case was re-set for trial with notice to Teresa at least two times thereafter. There is nothing in the record to indicate Teresa was not ready for trial, but none occurred. The record is completely devoid of any hint or showing of any kind that any trial delay was attributable to Teresa after January 17, 1973. The State secured a continuance thereafter, but Teresa did not.
The speedy trial situation is different as to Ozzie. He secured continuance of his trial set for February 23, 1973 and a new notice of trial dated March 1, 1973 was entered as to him and he was tried within 90 days thereafter on May 3, 1973. It does not appear he was entitled to speedy trial discharge.
After the conflict of decisions became apparent in Teresa's case, we were at liberty to consider the case as a whole, including the transcript.
We reviewed the transcript because of the claim of Petitioners that there was fundamental error committed as to them in that they were convicted of grand larceny when the State's evidence did not support a conviction of grand larceny.
The information in the case charged they committed grand larceny by stealing fishing reels, drill sets, wrench sets, of a value of more than $100 from Sears, Roebuck and Company.
We discovered from our review of the transcript that the evidence submitted to establish grand larceny falls short of the mark.
The items allegedly stolen by Petitioners were introduced in evidence as State's Exhibits 1 to 5, inclusive.
The testimony of a Sears' employee, Al Simoneau, at the trial as to the value of the personal property in Exhibits 1 and 2, i.e., two Penn Senator four "O" reels, allegedly stolen by Petitioners, was that Sears pays "nineteen dollars and sixty cents per reel," the wholesale price to Sears. On cross-examination the witness admitted he never worked for the manufacturer or distributor of the reels and could not testify what others paid for a similar item.
Another Sears' employee, Raymond Kruntorad, its division manager in its hardware department, testified that the alleged stolen wrench sets introduced in evidence as State's Exhibit 3 each cost Sears $8.22, or an aggregate wholesale cost to Sears for all the wrench sets allegedly stolen of $41.10.
This witness also testified other stolen items introduced at trial as State's Exhibit 4 (drill sets) were "sold and purchased" in his department and their value per set when stolen was $18 each, which would be a total of $36 for all of them.
The witness also testified that the State's Exhibit 5, "a tap and die" set, was carried in his department and had a value when stolen of $19.60. The "tap and die" set was not mentioned in the information and it follows defendants were never charged with this theft.
The aggregate of Sears' wholesale purchase price of these items, which witness Kruntorad identified and testified concerning, was $96.70.
The State had the burden to establish the offense charged beyond and to the exclusion of every reasonable doubt, not just *108 inferentially. Moreover, it must clearly prove the degree of the crime. In this instance whether it was grand or petty larceny.
From our reading of the evidence, it is inconclusive that grand larceny was committed although there is sufficient evidence to establish petty larceny. The stolen articles had "some value" but there is no sufficient evidence of the items' market value or retail value at the time of the theft. A reading of the evidence only shows cost or wholesale prices of the stolen articles to Sears without more.
Proof of the element of value is essential to a conviction for grand larceny and must be established by the State beyond and to the exclusion of every reasonable doubt. Carnley v. State (1921), 82 Fla. 282, 89 So. 808. In determining the value of property, proof thereof may be shown by such elements or facts affecting the question as may exist. Recourse may be had to the items of cost, as well as the utility and use of the property. Sullivan v. Lear (1887), 23 Fla. 463, 2 So. 846. The original market cost of the property, the manner in which it has been used, its general condition and quality, the percentage of depreciation since its purchase or construction are elements of proof to be submitted to the jury to aid it in ascertaining value in such cases. 13 Fla.Jur. Evidence § 172.
The law in Florida is well settled that testimony as to the cost of stolen property is insufficient in itself to establish the value of the time of the theft. Hicks v. State (1937), 127 Fla. 669, 173 So. 815. In that case Mr. Justice Terrell said that the evidence as to the value of the allegedly stolen brood sow should have been confined to her value at the time she was alleged to have been stolen and should have been based on market value unless shown to have had an intrinsic or peculiar value for stock purposes.
In Todd v. State (Fla.App. 1966), 187 So.2d 908, the District Court held that evidence as to the cost of the alleged stolen property (radio and television sets) did not establish its market value at the time of the theft. The state had presented evidence that the property had cost $135 when acquired two years earlier. A similar holding resulted where the allegedly stolen property was wire belonging to the Florida Power and Light Co. which cost $.572 per foot, but there was no evidence that all the wire taken had a market value of $100 at the time of the theft. Spencer v. State (Fla.App. 1969), 217 So.2d 332. Compare Guerrero v. State (Fla. 1974), 289 So.2d 396.
This Court has apparently never addressed the precise question presented in the instant case. The crucial inquiry concerns the meaning of the term, "market value." Where the theft is from a department store, does it signify value in the wholesale market or is the wholesale market cost only to be considered as one factor among other potential factors such as the length of time since the stolen goods were purchased from the wholesaler, their present condition, the current adaptability of the product to the use for which it was manufactured, the price being paid for similar merchandise in the vicinity  in addition to the other factors mentioned herein. This question has been considered, however, by the Third District Court of Appeal in Thompson v. State (Fla.App. 1971), 249 So.2d 51, where the defendant-appellant was convicted of grand larceny of 28 pairs of pants and 8 shirts from a retail store. An employee of the store testified to a retail value of more than $400 and a wholesale value of more than $100. This conviction was affirmed despite the defendant's objection that the value was not proven to be more than $100. We agree this conclusion was eminently sound.
In the instant case there is no clear evidence other than the wholesale cost to Sears of the allegedly stolen goods produced by the State for the jury's consideration in determining their value. At least the evidence sould have shown the retail *109 prices of all the allegedly stolen items in order to clearly demonstrate their market value and a salability at that price near the time of the alleged theft.
It is well to keep in mind the rule of construction that criminal statutes are to be strictly construed as well as their application in a light most favorable to the party against whom they are asserted.
The decision of the District Court is quashed and the case remanded with directions that Teresa Negron be discharged for failure to accord her a speedy trial and that a judgment of conviction be entered against Ozzie Negron for petty larceny and to re-sentence him accordingly. Compare Guerrero v. State, supra.
It is so ordered.
ADKINS, C.J., and ERVIN, McCAIN and DEKLE, JJ., concur.
ROBERTS, BOYD and OVERTON, JJ., dissent.