NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


M.P.,                                    )
                                         )
          Appellant,                     )
                                         )
v.                                       )     Case No. 2D17-871
                                         )
STATE OF FLORIDA,                        )
                                         )
          Appellee.                      )
                                         )
_____  )

Opinion filed September 21, 2018.

Appeal from the Circuit Court for
Hillsborough County; Christopher Nash,
Judge.

Howard L. Dimmig, II, Public Defender,
and Anthony C. Musto, Special Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Dawn A. Tiffin,
Assistant Attorney General, Tampa, for
Appellee.


ROTHSTEIN-YOUAKIM, Judge.

          M.P. appeals the restitution judgment entered after the trial court

adjudicated him delinquent based on his admission to committing, among other

delinquent acts, burglary and grand theft of Raul Laureano-Cheveres's motor vehicle.

The written restitution judgment orders M.P. to pay Laureano-Cheveres $5080, which was the sum of the trial court's oral findings on Laureano-Cheveres's insurance deductible for repairing the vehicle, the amount that he had to personally pay to replace the vehicle's damaged tire and damaged rims, and the fair market value of items that had been inside the vehicle when it was stolen but were missing when the police recovered it.

We agree with M.P.'s argument that competent substantial evidence does not support the restitution awards for the electronic torque wrench, the Samsung Gear S watch, and the cordless screwdriver that were missing from the vehicle, but we reject without further comment his challenges to the trial court's findings regarding the other items. We also agree that the trial court erred in failing to determine whether the restitution award exceeded what M.P. could reasonably be expected to make or pay. Therefore, as explained below, we reverse the restitution judgment and remand for further proceedings.

## I. Background

Laureano-Cheveres was the only witness at the restitution hearing. He testified that he had to pay an insurance deductible for damage to the body of his vehicle and had to pay out of pocket to replace one tire and two rims that had been damaged. He also testified that upon return of his vehicle in October 2016, he had noticed that the following items, which had been inside of the vehicle at the time of the theft, were missing: two impact wrenches, an air impact wrench, a cordless drill, an electronic torque wrench, a 100-round magazine for an AR-15, a Samsung Gear S watch, a cordless screwdriver, and Halloween costumes.

- 2 -

Laureano-Cheveres purchased the cordless screwdriver "[i]n the 2013 timeframe, 2014" for "[t]wo hundred and forty-some dollars, $44 -- $244 or $243," and "it was [in] fairly good working condition" before being stolen. He purchased the electronic torque wrench, which was "used for precision usage," "[a]round 2013, somewhere around there" for "[f]our-hundred and fifty-some dollars." He purchased the Samsung Gear S watch, which he described as "a phone as well," "in 2012, 2013, somewhere around that timeframe" for $300. He also mentioned that the tools were his "professional tools," but beyond that, his description of these three items was limited to the foregoing.

M.P. argued that the State failed to introduce sufficient evidence of the fair market value of most of the stolen items because Laureano-Cheveres testified merely to their purchase price and date, did not testify as to the condition of some items at the time of the theft, and never mentioned depreciation. The trial court disagreed, relying on this court's opinion in Duncan v. State, 192 So. 3d 654 (Fla. 2d DCA 2016), and awarded restitution of $1200 for the two impact wrenches ($600 each), $400 for the air impact wrench, $700 for the cordless drill, $200 for the AR-15 magazine, $80 for the Halloween costumes, $1000 for the insurance deductible, and $500 for the one tire and two rims, the sum of which is $4080. The court also awarded $450 for the electronic torque wrench, $250 for the cordless screwdriver, and $300 for the Samsung Gear S watch, resulting in total restitution of $5080.

Following this oral pronouncement, M.P. objected because the trial court had failed to make a finding regarding what M.P. could reasonably be expected to make

or pay. But the court merely responded, "Okay," and then imposed the restitution as a lien pursuant to the State's request. M.P. timely appeals.

## II. Analysis

The court may order a delinquent child to pay restitution "for any damage or loss caused by the child's offense in a reasonable amount or manner to be determined by the court." § 985.437(2), Fla. Stat. (2016). When the trial court orders restitution, however, "the amount of restitution may not exceed an amount the child and the parent or guardian could reasonably be expected to pay or make." Id. The State has the burden of proving the amount of restitution by the greater weight of the evidence. See J.L.C. v. State, 189 So. 3d 260, 261 (Fla. 2d DCA 2016). We review for an abuse of discretion the trial court's determination of the amount of restitution, and we will not disturb the findings underlying that determination if competent substantial evidence supports them. See id.

Unlike criminal offenses, in which the value of the property involved is an essential element that should be proven by establishing its fair market value at the time of the crime, restitution does not demand "such a rigid standard of proof." See State v. Hawthorne, 573 So. 2d 330, 332 (Fla. 1991). Thus, "a court is not tied to fair market value as the sole standard for determining restitution amounts, but rather may exercise such discretion as required to further the purposes of restitution." Id. at 333. But when the court "determine[s] that a restitution amount equal to fair market value adequately compensates the victim or otherwise serves the purposes of restitution, . . . the value should be established either through direct testimony or through evidence of the four

factors announced in Negron[1]."  Id. (footnote omitted).  The direct testimony can be established by a victim who opines as to the fair market value at the time of the theft, so long as the victim is competent to testify to such by demonstrating sufficient familiarity with the item and its value.  See S.M. v. State, 159 So. 3d 966, 968 (Fla. 2d DCA 2015).  Otherwise, the trial court should ascertain the fair market value by considering evidence of its original market cost, its manner of use, its general condition and quality, and the percentage of depreciation.  See Hawthorne, 573 So. 2d at 332-33.

### A.  The Cordless Screwdriver

Laureano-Cheveres testified that he purchased the cordless screwdriver two to three years before the incident for either $243 or $244, that it was one of his "professional tools," and that it was in fairly good working condition at the time of the theft.  This was sufficient evidence for the trial court to determine an appropriate amount of restitution, even absent evidence of depreciation.  See Duncan, 192 So. 3d at 655-56 (affirming $1300 restitution award for a smart TV based on testimony that the victim purchased it one or two years earlier for $1300, that it was in good condition at the time of the theft, and that the "victim purchased a replacement television for $500, but unlike the stolen television, it was not a 'smart' television"); J.M. v. State, 661 So. 2d 1285, 1285-86 (Fla. 4th DCA 1995) (holding that the evidence was sufficient to support the amount of restitution awarded for "a wallet, a money clip, a driver's license, antique Roman coins, a brief case, and tools" stolen from vehicle because the victim "estimated that it cost $100.00 to buy the Roman coins, $100.00 to buy the briefcase and $50.00 to

---

[1]Negron v. State, 306 So. 2d 104 (Fla. 1974), receded from on other grounds by F.B. v. State, 852 So. 2d 226, 229 (Fla. 2003).

- 5 -

buy the tools[, and a]lthough he did not know the exact fair market value of the rest of the items, [the victim] estimated that it cost approximately $10.00 to replace his wallet and driver's license, and $75.00 to replace the money clip").

Nevertheless, we reverse the restitution awarded for the cordless screwdriver because competent substantial evidence does not support the trial court's award of $250 in restitution for that item. There was no evidence that it had somehow appreciated in value since Laureano-Cheveres purchased it. See Ibrahim v. State, 866 So. 2d 749, 751 (Fla. 5th DCA 2004) (agreeing with the State's concession "that the trial court erroneously awarded restitution in the amount of $2,400 for an 18 [k]arat gold rope chain, when the victim testified that the value of the chain at the time of the theft was $2,300").

### B. The Electronic Torque Wrench and Samsung Digital Watch

We also reverse the restitution awarded for the electronic torque wrench and the Samsung Gear S watch because the State failed to introduce sufficient evidence to support an award of restitution for either item. Laureano-Cheveres never personally opined as to either item's fair market value at the time of the theft but merely testified to the price that he had originally paid for each approximately three to four years before the theft. With only this information and the absence of any testimony concerning either the condition of each at the time of the theft or depreciation, the trial court had insufficient evidence from which it could determine a fair market value at the time of the theft. See Thompson v. State, 68 So. 3d 425, 427 (Fla. 4th DCA 2011) (holding that the victim's testimony of the items' original purchase price was insufficient to support the restitution award because the record contained "no competent evidence

of the 'general condition and quality of the items' or the percentage of depreciation that would permit the trial court to calculate market value"); see also Hawthorne, 573 So. 2d at 332, 333 & n.6 (explaining that absent direct evidence such as the owner's personal opinion of fair market value, the trial court can determine fair market value based on consideration of item's original market cost, manner of use, general condition and quality, and percentage of depreciation). Moreover, there was insufficient evidence to justify reliance on a method other than fair market valuation. See Hawthorne, 573 So. 2d at 333 (explaining that the court has discretion to award restitution based on approach other than fair market value if needed to adequately compensate the victim or otherwise further the purpose of restitution).

### C. Reasonable Expectation to Pay or Make

We also reverse the written restitution judgment because, as M.P. correctly argues, the trial court failed to make any findings concerning what M.P. or his parent(s) or guardian(s) could reasonably be expected to pay or make. See § 985.437(2); K.T.M v. State, 969 So. 2d 542, 543 (Fla. 2d DCA 2007) ("[I]t is reversible error for a trial court to order restitution to be paid by a child without making findings concerning the child's ability to earn and ability to pay." (citing M.W.G. v. State, 945 So. 2d 597, 601 (Fla. 2d DCA 2006))).

We disagree with the State's argument that M.P. failed to adequately preserve this issue for review. In a criminal case, ability to pay is considered in enforcement proceedings after the court orders restitution, see § 775.089(6), Fla. Stat. (2016), but in a juvenile case, the court must determine before ordering restitution what the delinquent child or his or her parent(s) or guardian(s) can be reasonably expected to

both pay and make, see § 985.437(2); L.W. v. State, 163 So. 3d 598, 601 (Fla. 3d DCA 2015) ("The cases discussing and interpreting section 985.437 universally require the trial court to make a factual finding that the child and/or his parent or guardian could reasonably be expected to pay the amount of the loss at the time the restitution is imposed, not merely when the court is subsequently required to enforce the order or determine whether the juvenile violated his probation."); see also J.A.B. v. State, 993 So. 2d 1150, 1152 (Fla. 2d DCA 2008) (en banc) (noting that section 775.089(6) previously required consideration at the restitution hearing of both the victim's losses and the defendant's financial resources, that a subsequent amendment shifted the consideration of the defendant's financial resources to the enforcement proceeding, and that the juvenile statute had not been not similarly amended so that trial courts must still consider the ability to earn and pay before ordering restitution). Especially because of this distinction in timing, M.P. adequately preserved the issue when he objected contemporaneously with the court's failure to make the requisite findings; he did not need to object again after the trial court imposed the lien.

We also disagree with the State's assertion that M.P. had the burden to prove what he and his parents could reasonably have been expected to pay or make and that by failing to provide any such evidence on which the court could premise such a finding, M.P. relieved the trial court of its duty to make such a finding. It is true that the criminal restitution statute imposes this duty on the defendant and that this court has previously noted that the criminal statute can provide guidance when the juvenile statute is silent on a matter. See J.A.B., 993 So. 2d at 1152. The criminal restitution statute, however, cannot provide guidance regarding the evidentiary burden necessary to

- 8 -

support a finding in a juvenile restitution proceeding that, as noted above, the criminal statute does not require be made in the criminal restitution proceeding. See § 985.437(2); L.W., 163 So. 3d at 601 n.2 (noting that the restitution process applicable to juvenile delinquency proceedings "is precisely the opposite of the restitution process for adults, which requires the trial court to consider the defendant's ability to pay only at the time of enforcement of the restitution order, not at the time the restitution order is imposed"). Moreover, when the delinquent child fails to introduce evidence of what the child or the child's parents or guardians could be reasonably expected to pay or make, we remand for a new hearing on that issue. See K.T.M., 969 So. 2d at 543 (reversing restitution award because the court failed to make any finding on K.T.M.'s ability to earn or pay, despite noting that "[n]either the State nor K.T.M. offered any evidence concerning K.T.M.'s ability to earn money or ability to pay restitution"); see also M.W.G., 945 So. 2d at 601 ("When no evidence of what the child could reasonably be expected to earn is presented at the restitution hearing, the trial court cannot make a finding on this issue. In the absence of such a finding, an appellate court must reverse the restitution order and remand for a hearing on the child's ability to earn and ability to pay." (citations omitted)).

### III. Conclusion

We reject M.P.'s challenges to the trial court's findings regarding the two impact wrenches, the air impact wrench, the cordless drill, the AR-15 magazine, the Halloween costumes, the car insurance deductible, the tire, and the two rims. However, the trial court erred in its findings regarding the cordless screwdriver, electronic torque wrench, and Samsung Gear S watch. The trial court also erred because it failed to

make any findings regarding what M.P. or his parent(s) or guardian(s) could be reasonably expected to make or pay. Accordingly, we reverse the restitution judgment and remand for a new restitution hearing consistent with this opinion.

Reversed and remanded.


NORTHCUTT and SALARIO, JJ., Concur.